## FELTS v. MURPHY, WARDEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

No. 533. Argued February 26, 27, 1906.—Decided March 12, 1906.

Where in the criminal trial of a person *compos mentis*, but almost totally
deaf, the state court has jurisdiction of the subject matter and of the
person, and also to direct and enforce the judgment which was entered,
the jurisdiction is not lost by any irregularities caused by the failure of
the court to have the testimony repeated to the accused through an ear
trumpet; nor is the accused thereby deprived of his liberty without due
process of law in violation of the Fourteenth Amendment. Even though
the case be a hard one Federal courts cannot on *habeas corpus* proceed-
ings grant relief from the judgment; their power is limited to the ques-
tion of jurisdiction.

The writ of *habeas corpus* cannot perform the functions of a writ of error.
*Re Nielsen*, 131 U. S. 176, distinguished.

THE appellant was indicted in the Circuit Court of Winnebago
County, in the State of Illinois, for the crime of murder. He
was tried at the January term of that court, held in 1905, found
guilty, and sentenced to the penitentiary for his natural life.
He made an application to the Circuit Court of Cook County
for a writ of *habeas corpus*, after judgment upon the verdict had
been entered, and that court denied the writ. He then made
a like application to the Supreme Court of the State of Illinois,
which was denied. The appellant says that he was unable to
obtain a writ of error in the state court, because, as he avers,
it would cost between $700 and $800 to print the record, and
that he was absolutely penniless, except that he had a pension
of some $24 a month. Hence he was unable to obtain any relief
in the state courts.

Subsequently the appellant applied by written petition to the
United States Circuit Court for the Northern District of Illinois,
Eastern Division, for the same writ, to be directed to the warden
of the Illinois state penitentiary, where the petitioner was con-

fined under the judgment entered upon the verdict of guilty
upon the trial of the indictment. The appellant alleged in his
petition the foregoing facts, and also, among other things, that
he was not guilty of the crime of which he was indicted and had
been convicted. He further stated and described the circum-
stances in which the killing was done, and said that he had been
set upon on a dark night by someone unknown to him, who
came upon him from behind and grasped him by the neck and
almost broke it as he ran him about in the dark; that his neck
was very badly hurt in the struggle and marks were left upon
it visible for days thereafter. In the struggle the person was
killed and the petitioner was subsequently convicted of his mur-
der. The petitioner is a veteran of the Civil War and lost his
hearing in the line of his duty as a soldier, and is now between
60 and 70 years of age. He is so deaf that he can only hear
when a person speaks into the mouthpiece of his ear trumpet
close to his ear.

He alleged in his petition that upon the trial of the case he
did not hear one single word of the examination of the jurors,
either by the State's attorney or by his own counsel; that he
did not hear the names of the jurors nor their business, and
could not confer intelligently with his counsel as to the advisa-
bility of acceptance or rejection of a juror, and, as a matter of
fact, he was not consulted and did not know the facts elicited
by the examination of the jurors before acceptance; that if he
had known the facts as they occurred he would have counseled
the rejection of certain jurors on account of their relationship
to other people; that he did not hear or have communicated to
him, in any way, the evidence of the witnesses on the trial of
his case, and that he was unable to suggest to his counsel any
questions for their examination or cross-examination during
the trial, and that the substance of their evidence was not com-
municated to him, and he did not know what it was until he
saw some partial reports of it in the newspapers, when it was
too late to suggest to his counsel proper cross-questions; that
the first thing communicated to him after the beginning of the

trial, which lasted about two weeks, was the verdict; he was in the court room, with his ear trumpet, but was unable to hear the verdict, and did not know what the verdict was until the clerk of the court wrote it upon a piece of paper and gave it to him.

He was present in the court room during the motion for a new trial, but did not hear a word that was said by either counsel, and the only thing communicated to him was when he was called to the bar to be sentenced.

The record shows that after the motion for a new trial had been made, the court said, "on reviewing the entire case I am disposed to say that the motion for a new trial be overruled." Continuing, the court said:

"It is regretted in one sense that the defendant, on account of his infirmity, is unable to know clearly what has been done. He should be informed, I suppose, of the fact that his motion for a new trial has been overruled. Mr. Sheriff, will you bring Mr. Felts forward? I wish you would say to Mr. Felts that his motion for a new trial has been overruled.

"The SHERIFF: The court wishes me to tell you that motion for a new trial is overruled. Do you understand?

"FELTS: I understand; yes.

"The COURT: You may ask him if he has anything to say why sentence of the court should not now be pronounced.

"The SHERIFF: Have you anything to say why sentence of the court should not now be pronounced?

"FELTS: False swearing is all I got to say.

"The COURT: Well, under the circumstances of course it is practically impossible for me to say anything to this defendant.

"(Here follows the sentence of the court), which sentence was transmitted to the defendant by the sheriff through a tube."

The record shows that the appellant was himself examined as a witness on his trial and had the benefit of counsel, who appeared for and defended him upon such trial.

He contended before the Federal Circuit Court, on his appli-

cation for the writ of *habeas corpus*, that, on account of the manner in which he was tried, his constitutional rights had been denied him, and that his conviction was without due process of law within the meaning of the Fourteenth Amendment to the Constitution of the United States, and that he was entitled, therefore, to be discharged from imprisonment under the judgment. He also urged that the same was void, as being rendered without jurisdiction on account of the violation of his constitutional rights. The Circuit Court denied the application for the writ, and from the order denying the same the appellant has appealed to this court.

*Mr. William E. Mason* for appellant:

Under the common law there can be no trial unless the defendant is permitted to know and understand the nature and purpose of the trial, and he could not have his common-law rights and what were clearly his constitutional rights unless he could hear, or have communicated to him in some proper way, the evidence of witnesses, examination of jurors, and all of the details of the trial.

Both by the state constitution and the Constitution of the United States the accused was entitled to the common-law right of trial by jury, conducted according to the well-known practice in criminal cases. *Harris* v. *People*, 128 Illinois, 585.

The rules of practice in cases where the accused is suffering from deafness have long been established. 1 Hale's Pleas of the Crown, 34. See *State* v. *Harris*, 53 N. Car. 8, where the defendant was a deaf mute. *Rex* v. *Dyson*, 2 Lewin's Crim. Cas. 64. Also the case of a deaf mute where the jury were instructed to find her not sane if through defect of her faculties she could not understand the nature of the proceedings against her. See also *Rex* v. *Pritchard*, 7 Car. & Payne, 303. In the case first cited it was held, after reviewing the authorities, that the defendant on account of his infirmities, could not be tried.

The defendant never had a trial as contemplated by the constitution of the State and of the United States. He was never

permitted to plead in person and the failure to communicate to him the details of the trial was a denial of his constitutional rights. *Thompson's Case*, 2 Lewin, 137; *Berry's Case*, 13 Foxe's Crim. Law, 189.

These rights could not be waived. *Harris* v. *People*, 128 Illinois, 585; *Ex parte Ulrich*, 42 Fed. Rep. 587; *In re Nielsen*, 131 U. S. 183.

*Mr. Harry B. North*, with whom *Mr. William H. Stead*, Attorney General of the State of Illinois, and *Mr. Edgar Eldridge* were on the brief, for appellee:

It has been too frequently decided to be now open to question that a writ of *habeas corpus* cannot be made use of to perform the functions of a writ of error or an appeal. *In re Lennon*, 166 U. S. 552; *In re Eckart*, 166 U. S. 481; *United States* v. *Pridgeon*, 153 U. S. 48; *Reid* v. *Jones*, 187 U. S. 153; *Ex parte Bigelow*, 113 U. S. 328; *Ex parte Belt*, 159 U. S. 95; *Storti* v. *Massachusetts*, 183 U. S. 138; *Ex parte Tyler*, 149 U. S. 164; *Ex parte Cuddy*, 131 U. S. 280; *Ex parte Terry*, 128 U. S. 289; *In re Coy*, 127 U. S. 731; *In re Schneider*, 148 U. S. 162; *In re Debs*, 158 U. S. 564, 600; *Ex parte Yarborough*, 110 U. S. 651; *In re Swan*, 150 U. S. 637; *Ex parte Ayers*, 123 U. S. 443; *Ex parte Fiske*, 113 U. S. 713.

Mere errors in the judgment or proceedings upon which the judgment was founded will not be sufficient to obtain the writ. 15 Am. & Eng. Ency. of Law, 2d ed. 172; *People* v. *Allen*, 160 Illinois, 400.

If the court has jurisdiction of the person and of the subject matter the judgment cannot be inquired into in a collateral proceeding. *People* v. *Murphy*, 202 Illinois, 493; *People* v. *Allen*, 160 Illinois, 400; Church on *Habeas Corpus*, 2d ed. § 356.

Having acquired complete jurisdiction to hear, determine and adjudicate in reference to the subject matter before it, the court did not, nor could it lose that jurisdiction by any error that may have been subsequently committed; for error intervening after the judgment attached, the judgment must be reversed in a

direct proceeding on appeal or writ of error, but that cannot be urged in a collateral suit. *Herandex* v. *Drake*, 81 Illinois, 34; *People* v. *Murphy*, 202 Illinois, 493.

Law, in its regular course of administration through courts of justice, is due process, and when secured by the law of the State the constitutional requirement is satisfied. Due process is secured by laws operating on all alike. *Maxwell* v. *Dow*, 176 U. S. 581; *Bergemann* v. *Backer*, 157 U. S. 655.

Provision has been made by statute in Illinois to try the question of mental capacity of one charged with crime. Hurd's Statutes of Ill. c. 38, 1897 ed. §§ 282, 284, 285, and 286.

The case of *State* v. *Harris*, 53 N. Car. 136, and cases cited therein, determined the practice obtained by common law to try the question of the mental condition of one charged with crime, and if insane or of insufficient intellect to comprehend the course of the proceedings on the trial, such person could not be found guilty of crime, but was held and dealt with as an insane person. They go no further. In the case at bar no such case is presented. There is no claim that relator was mentally incapable of being tried, but that his hearing was impaired only. But if it be conceded for argument that the trial court should have provided means of interpreting to relator questions to, and answers from, jurors and witnesses on the trial, such omission at best would have been but error or irregularity, which could be corrected by writ of error and not by writ of *habeas corpus*.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The uncontradicted facts are that this unfortunate man has been convicted of the crime of murder and sentenced to imprisonment for life, although he did not hear a word of the evidence that was given upon his trial, because of his almost total deafness, his inability to hear being such that it required a person to speak through his ear trumpet, close to his ear, in order that such person should be heard by him.

Counsel for the appellant has cited in his brief cases regarding the mode of procedure which has been sometimes adopted where, from the condition of mind of the individual to be tried, it was doubtful if he were able to understand or comprehend the proceedings of the trial, and it may well be that such a method might properly have been adopted in this case. But upon this writ the question for our determination is simply one of jurisdiction. If that were not lacking at the time of the trial and if it continued all through, then the application for the writ was properly denied by the Circuit Court, and its order must be affirmed. The writ cannot perform the function of a writ of error. *Ex parte Bigelow,* 113 U. S. 328; *In re Lennon,* 166 U. S. 548, 552; *In re Eckart,* 166 U. S. 481.

In this case the state court had jurisdiction both of the subject matter and of the person upon the trial of the accused, and such jurisdiction was not lost during his trial but continued to its end, and it had jurisdiction to direct the judgment which was entered and to have the same executed. If there were any irregularities in the trial of the appellant, because of the failure of the court to see to it that the testimony in the case was repeated to him through the ear trumpet which he had with him, it was at most an error, which did not take away from the court its jurisdiction over the subject matter and over the person of the accused. The appellant was not deprived of his liberty without due process of law by the manner in which he was tried, so as to violate the provisions of the Fourteenth Amendment to the Federal Constitution. That Amendment, it has been said by this court, "did not radically change the whole theory of the relations of the state and Federal Governments to each other and of both governments to the people." *In re Kemmler,* 136 U. S. 436, 448; *Brown* v. *New Jersey,* 175 U. S. 172, 175.

We are unable to see how jurisdiction was lost in this case by the manner of trial. The accused was *compos mentis.* No claim to the contrary is made. He knew he was being tried, on account of the killing of the deceased. He had counsel and understood the fact that he was on trial on the indictment men-

tioned, but he did not hear the evidence. He made no objection, asked for nothing, and permitted his counsel to take his own course. We see no loss of jurisdiction in all this and no absence of due process of law. It is to be regretted that the testimony was not read or repeated to him. But that omission did not affect the jurisdiction of the court.

Upon the point that the failure to have repeated to the appellant the testimony given on the trial caused the court to lose jurisdiction, the case of *Nielsen, Petitioner*, 131 U. S. 176, is cited by appellant. We think it plain that the case does not substantiate the contention. The sentence imposed in that case was held by this court to have been beyond the jurisdiction of the trial court to pronounce, because it was against the express provisions of the Constitution, which bounds and limits all jurisdiction; but we are entirely clear that in this case the trial was so conducted that there was not at any time any lack of jurisdiction in the court, and that the most that can be urged is that there might have been an error committed by the trial court in omitting to have the evidence repeated to the appellant as it was given by the witnesses at the trial, even though no demand of the kind was made by petitioner or his counsel.

Although the conviction and punishment of the appellant under the facts appearing on this record may seem to be somewhat hard, yet this court has no jurisdiction to grant the relief asked for.

The order of the Circuit Court refusing the writ was right, and is

*Affirmed.*