### HALE v. CRAWFORD.

No. 2824.

Circuit Court of Appeals, First Circuit.

June 15, 1933.

George B. Lourie, Asst. Atty. Gen. (Joseph E. Warner, Atty. Gen., S. D. Bacigalupo, Asst. Atty. Gen., and John Galleher, Dist. Atty., of Leesburg, Va., on the brief), for appellant.

J. Weston Allen and Butler R. Wilson, both of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from an order of the District Court for Massachusetts in a habeas corpus proceeding discharging the applicant from the custody of the respondent, who held him under the warrant of the Governor of Massachusetts in an interstate rendition proceeding, directing his return to the state of Virginia.

At the February term, 1932, of the circuit court of Loudoun county, Va., the applicant, George Crawford, a negro, was indicted for murder in two indictments. January 17, 1933, the prosecuting attorney for Loudoun county asked the Governor of Virginia to request the Governor of Massachusetts to cause Crawford to be returned to Virginia. January 18, 1933, the Governor of Virginia made such request and the Governor of Massachusetts, after a hearing, on February 18, 1933, issued his warrant authorizing the arrest of Crawford and his delivery to the duly authorized agents of Virginia. On that day the respondent arrested Crawford on the warrant and now holds him thereunder. Thereupon Crawford filed in the federal District Court for Massachusetts a petition for the writ of habeas corpus, subsequently amended April 5, 1933. A summons having been issued and served, the respondent filed his return setting up that he held Crawford under and by virtue of the warrant, to be delivered to the Virginia agents; that Crawford was the identical person named in the warrant; and denied each and every allegation of the petition. April 24, 1933, the District Court ordered the writ of habeas corpus to issue, and on that day the parties appeared before the court and were heard.

At the hearing the applicant offered in evidence an agreed statement of facts, which in substance was that, while the statutes of Virginia, prescribing the qualifications of and who should be drawn as grand jurors, did not discriminate against persons of African descent, the circuit judge for Loudoun county, designated by law to select the grand jurors, selected no persons of African descent to serve on the grand jury which returned the indictments in question, but excluded from the list all such persons because of their race and color, although there were persons of African descent in that county duly qualified to act as grand jurors. The facts stated in this agreement were offered in evidence by the applicant and admitted by the court, subject to exception. The respondent put in evidence the requisition papers of

the Governor of Virginia and the rendition warrant of the Governor of Massachusetts.

The requisition papers of the Governor of Virginia contained the application of the prosecuting attorney of Virginia above referred to, copies of the indictments and the bench warrants issued thereon, a certificate that the indictments were authentic and duly authenticated according to the laws of that state, that each charged Crawford with the crime of murder, which the Governor of Virginia certified to be a crime under the laws of that state committed in the county of Loudoun, and also a certificate that the circuit court for Loudoun county was a court of general jurisdiction. It was further stated that Crawford was a fugitive from the justice of that state, had taken refuge in the state of Massachusetts, and a request was made that he be apprehended and delivered to certain persons named, who were authorized to receive and convey him to the state of Virginia.

It was agreed that Crawford, the party charged with crime in the indictments and described in the requisition warrant, was the identical person arrested and before the court, and that the evidence submitted by the respondent made a prima facie case for rendition.

Upon the case thus presented the District Court ruled that the indictments were void and ordered the applicant discharged; but remanded him to the custody of the respondent pending final determination of this appeal.

The first question to be considered is whether the court erred in admitting the evidence in regard to the discrimination by the officer of Virginia in the selection and organization of the grand jury which found the indictments. The indictments are conceded to be valid and proper on their face, and the question is whether the evidence relating to the selection and organization of the grand jury and attacking the validity of the indictments was competent.

This question, so far as we know, has not been passed on in a habeas corpus case arising out of an interstate rendition proceeding; but it has been in such cases arising out of proceedings under section 1014 of the Revised Statutes (18 USCA § 591), authorizing the arrest and removal of a person charged with crime in a federal district other than the one in which he is arrested. Greene v. Henkel, 183 U. S. 249, 261, 22 S. Ct. 218, 223, 46 L. Ed. 177. In that case the indictment was good on its face and the evidence offered attacked its validity on the ground that the grand jury which found the indictment was not made up as the law required. In discussing the admissibility of the evidence, the court said:

"We do not think that under this statute [section 1014] the commissioner would be warranted in taking evidence in regard to the organization of the grand jury which found the indictment, as claimed by the defendants. The indictment is valid on its face; purports to have been found by a grand jury *acting in fact as such* [italics ours] at a regular term of a district court of the United States, presided over by one of its judges and hearing testimony in the ordinary way. In our opinion, such an indictment is prima facie good, and when a copy of it is certified by the proper officer, a magistrate, acting pursuant to § 1014 of the Revised Statutes, is justified in treating the instrument as an indictment found by a competent grand jury, and is not compelled or authorized to go into evidence which may show or tend to show violations of the United States statutes in the drawing of the jurors composing the grand jury which found the indictment." That "Matters of that nature are to be dealt with in the court where the indictment is found, and we intimate no opinion upon the merits of those questions"; that "we do not think that by this order of removal the constitutional rights of the defendants are in anywise taken from them"; that "the provision that no person may be held to answer for an infamous crime unless upon the presentment or indictment of a grand jury is not violated or infringed"; and that "if this so-called indictment be void [voidable] for the reasons alleged, the place to set up its invalidity is the court in which it was found."

Drew v. Thaw, 235 U. S. 432, 438, 35 S. Ct. 137, 138, 59 L. Ed. 302, was an interstate rendition case. In that case Thaw was indicted by a New York grand jury and in the indictment it was alleged that he had been committed to the Matteawan State Hospital for the insane under an order of court reciting that he had been acquitted at his trial upon a former indictment on the ground of insanity and that his discharge was deemed dangerous to public safety; that, being thus confined, he conspired with certain persons to procure his escape from the hospital and did escape, to the obstruction of justice and of the due administration of the laws. The Governor of New York made a demand upon the Governor of New Hampshire for his extradition, alleging that Thaw was a fugitive

from justice, and a copy of the indictment found by the New York grand jury accompanied the demand. The Governor of New Hampshire issued a warrant for the arrest and return of Thaw, upon which he was arrested. Thaw then applied to the federal District Court for New Hampshire for a writ of habeas corpus, and the District Court, after hearing, ordered his discharge. An appeal was taken to the Supreme Court. It appeared that, by a statute of New York, under which the indictment was found, it was provided that an agreement to commit any act for the perversion or obstruction of justice or of the due administration of the laws is a misdemeanor, if an overt act beside the agreement is done to effect the object. It was held (1) that, inasmuch as the courts of New York *may hold* that "the withdrawal, by connivance, of a man from an insane asylum, to which he had been committed as Thaw was, did tend to obstruct the due administration of the law," the indictment charged a crime; (2) that, if the conspiracy constituted a crime, there was no doubt that Thaw was a fugitive from justice; and (3) as to the contention that "if he [Thaw] was insane when he contrived his escape, he could not be guilty of crime, while if he was not insane, he was entitled to be discharged" and that his confinement and other facts required the court to assume that he was insane, the court held that this was not Thaw's trial, that in extradition proceedings the purpose of the writ of habeas corpus was "not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried," that the question of the sufficiency of the indictment was not open, and that, if the contention above stated "offers a nice question, it is a question as to the law of New York which the New York courts must decide." In concluding its opinion the court said:

"When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the governor of New York allege to be a crime in that state, and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of habeas corpus upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place."

And the court reversed the order of the District Court.

State of South Carolina v. Bailey, 53 S. Ct. 667, 670, 77 L. Ed. ——, decided by the Supreme Court May 22, 1933, is an interstate rendition case. There Bailey was charged, on an affidavit by a policeman before a local magistrate with having, on May 1, 1932, committed murder in South Carolina. Demand was made upon the Governor of North Carolina for delivery of the accused as a fugitive from justice. A warrant was issued by the Governor of North Carolina for the arrest of Bailey and his return to the state from which he fled. He was arrested on the warrant and at once applied to the local superior court for a writ of habeas corpus, alleging that he was not in the state of South Carolina at the time the murder was alleged to have been committed, but was in the state of North Carolina. The judge of the superior court, after hearing the parties and their evidence, ruled and found (1) that Bailey was a citizen of North Carolina; (2) that he was not a fugitive from justice; that he was not present in South Carolina at the time of the commission of the alleged crime; and (3) that the state of South Carolina had failed to show probable cause for holding him; and discharged Bailey. The Supreme Court of North Carolina, on review, affirmed the judgment of the lower court. 203 N. C. 362, 166 S. E. 165. The case was then taken to the Supreme Court of the United States on certiorari. That court reviewed the evidence and findings of the two state courts, and, after pointing out that the requisition papers were regular on their face and that in effect "the matter for determination was whether the accused appeared to be held contrary to the Federal Constitution and laws," said:

"The circumstances require this Court to search the record and determine for ourselves whether upon the facts presented the courts below reached the proper conclusion."

It held that the judgment below must be reversed, saying:

"Considering the Constitution [article 4, § 2, par. 2] and statute [section 5278, Rev. Stat., 18 USCA § 662] and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared *beyond reasonable doubt* [italics ours] that he was without the state of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice."

This is a holding that, where the requisition papers in a rendition proceeding are regular on their face, and prima facie valid, the accused on habeas corpus, if he undertakes to controvert any fact essential to his rendition and thus appearing from the requisition papers, must do so by proof *beyond a reasonable doubt*.

And in Rodman v. Pothier, 264 U. S. 399, 402, 44 S. Ct. 360, 361, 68 L. Ed. 759, a removal case, where the Circuit Court of Appeals for this circuit, when the case was before it (291 F. 311, 321), was of "the opinion that no other conclusion can be drawn from the evidence than that, at the time the crime charged in the indictment was committed, the United States had acquired no title in the land embraced within Camp Lewis Military Reservation; that the sovereignty of the state over the tract had not then been yielded up, and was not until ⁺ * * more than a year after the alleged murder"; that consequently the United States was without jurisdiction over the locus where the crime was alleged to have been committed, and this deprived the federal District Court for Washington, the district to which removal was sought, of jurisdiction of the crime. But the Supreme Court evidently regarded the question of the jurisdiction of the United States over the crime as one going to the merits of the case and triable in the District Court to which removal was sought, not one going to the jurisdiction of that court (Louie v. United States, 254 U. S. 548, 41 S. Ct. 188, 65 L. Ed. 399), and held that such question, although it involved matters of law as well as of fact, was for the determination of the trial court, not to be reviewed on habeas corpus. It was there said:

"Whether the locus of the alleged crime was within the exclusive jurisdiction of the United States demands consideration of many facts and seriously controverted questions of law. As heretofore often pointed out, these matters must be determined by the court where the indictment was found. The regular course may not be anticipated by alleging want of jurisdiction and demanding a ruling thereon in a habeas corpus proceeding. Barring certain exceptional cases (unlike the present one), this court—'has uniformly held that the hearing on habeas corpus is not in the nature of a writ of error, nor is it intended as a substitute for the functions of the trial court. Manifestly, this is true as to disputed questions of fact, and it is equally so as to disputed matters of law, whether they relate to the sufficiency of the indictment or the validity of the statute on which the charge is based. These and all other controverted matters of law and fact are for the determination of the trial court.' Henry v. Henkel, 235 U. S. 219, 229, 35 S. Ct. 54, 57, 59 L. Ed. 203; Louie v. United States, 254 U. S. 548, 41 S. Ct. 188, 65 L. Ed. 399."

See, also, Beavers v. Henkel, 194 U. S. 73, at page 87, 24 S. Ct. 605, 48 L. Ed. 882; Benson v. Henkel, 198 U. S. 1, 16, 17, 25 S. Ct. 569, 49 L. Ed. 919; Haas v. Henkel, 216 U. S. 462, 481, 30 S. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, Records and Briefs in United States Supreme Court, October term, 1909; Pothier v. Rodman (C. C. A.) 291 F. 311, 321; Id., 264 U. S. 399, 402, 44 S. Ct. 360, 68 L. Ed. 759; Fitzgerald v. United States (C. C. A.) 6 F.(2d) 156, 157; and Removal of Federal Offenders, by Russell Hardy, at pages 42–47.

Although the question of the admissibility of evidence now under consideration has not been passed upon by the Supreme Court in a rendition case, we see no reason why the reasoning applied in removal cases involving such question is not applicable in a rendition case involving the same or a like question. In removal cases the chief reason for rejection of the evidence seems to be that the matter to which it relates is one for the trial court to decide in the district to which removal is sought; it being an irregularity in the proceeding pending before that court and not a matter going to the jurisdiction of the court. Indeed it is this line of reasoning that is made use of and applied by the Supreme Court in habeas corpus proceedings brought by a person of African descent held for trial in a state court on an indictment found against him and where a like discrimination was made in the selection of the grand jury finding the indictment.

In re Wood, 140 U. S. 278, 11 S. Ct. 738, 741, 35 L. Ed. 505, is a case of that very nature. There Wood, a negro, was held in custody by a state warden of a prison of the state of New York, and presented a petition for writ of habeas corpus to the federal circuit court for the Southern District of that state, setting forth the facts concerning his detention. His application was denied by that court, and he appealed to the Supreme Court of the United States on the ground that he was restrained of his liberty in violation of the Constitution and laws of the United States. It appeared that he had been indicted, tried, and convicted in the Court of General Sessions of the Peace in the city and county of New York for the crime of murder,

had been sentenced to death, and committed to the custody of the warden awaiting execution. The indictment upon which he was arraigned and tried was found by a grand jury of that court from the panels and lists of which all persons of the African race and descent and black in color were excluded because of their race. And, while it was held that it was not the right of a colored citizen, party to a trial involving his life and liberty, "that his race shall have a representation on the jury," it was a right to which he was entitled "that in the selection of jurors to pass upon his life, liberty, or property, there shall be no exclusion of his race, and no discrimination against them, because of their color." It also held that the question was one that could be availed of in the first instance only in the court of the state where the trial was had, that it was a right that might be waived unless the question was duly saved in the manner provided by law, and, if duly saved and the decision of the highest court of the state was against his constitutional right, that error could be reviewed by the Supreme Court on writ of error from that court, not by habeas corpus in the federal Circuit Court, and the order of the Circuit Court denying the writ was affirmed. The same line of reasoning was applied in the Thaw Case, a rendition case.

We are therefore of the opinion that in a habeas corpus case, whether arising out of a rendition proceeding or a removal one, evidence of the character here in question is not admissible, as the question to which it is addressed is not open to review and determination on habeas corpus in a federal court, at any rate in the first instance; that the question is one that can be heard and determined by the trial court in Virginia, and, as said in Re Wood, supra, it was not intended by Congress that the federal courts should, by writ of habeas corpus, obstruct the orderly administration of the criminal laws of a state through its own tribunals.

But if we are mistaken in regard to the question just considered and the evidence was properly admitted, the question remains whether the District Court erred in ruling that the Virginia indictments, the bases of the warrant under which the applicant is held, are void. As no opinion was filed by the District Court, we have no complete statement of the view it entertained. But it apparently was and is that the method pursued in Loudoun county, Va., in the making up of the lists for and the drawings of grand jurors, whereby the state officials discriminat-

ed against citizens of African descent because of race or color, was a violation of the applicant's constitutional right under the Fourteenth Amendment and of such a nature as to render the indictments and all proceedings thereunder void, depriving the Virginia court of jurisdiction to proceed and try the case.

In Ex parte Virginia, 100 U. S. 339, 346, 25 L. Ed. 676, it was held that among the rights and immunities secured to the colored race by the Fourteenth Amendment to the Constitution was the right to be tried upon an indictment found by grand jurors selected without discrimination because of race or color, and that such right was violated where an officer of the state effected the discrimination, even though he acted in violation of the statutes of the state; and that the state official who, in making up the lists and drawings of jurors, discriminated against citizens of African descent because of race or color, was subject to indictment for such conduct under a federal statute enacted to give effect to the Fourteenth Amendment.

In Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664, a like constitutional question was presented. There a statute of West Virginia provided that "all white male persons who are twenty-one years of age and who are citizens of this State shall be liable to service as jurors," etc. It there appeared that the plaintiff in error, a colored man, was indicted for murder in the circuit court of Ohio county, W. Va., and was convicted, that on appeal to the Supreme Court of the state the judgment of the circuit court was affirmed and that a writ of error was then taken to the Supreme Court of the United States. In the circuit court of the state, before trial was commenced, the defendant presented a petition asking that the cause be removed into the Circuit Court of the United States, assigning as ground for removal that, by virtue of the laws of the state of West Virginia, no colored man was eligible to be a member of the grand jury or to serve on a petit jury in the state, etc. The petition was denied, and he was forced to trial. He also moved to quash the venire, made motions challenging the array of the panels, for a new trial, and in arrest of judgment, all of which were overruled, subject to exception. The first question considered was "whether by the Constitution and laws of the United States, every citizen of the United States has a right to a trial of an indictment against him by a jury selected and impaneled without discrimination against his race or color, because of

race or color; and, second, if he has such a right, and is denied its enjoyment by the State in which he is indicted, may he cause the case to be removed [Rev. Stat. § 641] into the Circuit Court of the United States?" Both of these questions were decided in the affirmative.

It is therefore established by these decisions that the discrimination exercised by the state officers of Virginia in making up the lists and drawings of the grand jurors by whom Crawford was indicted, was an infringement of his rights guaranteed by the Fourteenth Amendment, and the question is whether such act of discrimination is one which rendered the indictment void and deprived the Virginia courts of jurisdiction to try Crawford thereon. The answer to this question was forecast by what we have said and the decisions reviewed bearing upon the question relating to the admissibility of the evidence disclosing discrimination.

■ There are a number of cases in which the question has been considered and, as we understand them, they all point to the conclusion that the matter in question is an irregularity of a kind that must be availed of at the trial in the state court where the indictment is found; that it is an irregularity that may be and is waived, if the person on trial does not seasonably and in the modes provided by law raise the question in that court. In other words, that it does not render the indictment void or defeat the jurisdiction of the court in which the indictment is returned.

In Ex parte Harding, 120 U. S. 782, 7 S. Ct. 780, 781, 30 L. Ed. 824, Harding petitioned the Supreme Court of the United States for a writ of habeas corpus, asserting that he was deprived of his liberty and was about to be deprived of his life without the due process of law guaranteed by the Constitution of the United States, in that the indictment on which he had been tried and convicted in the territorial court for the territory of Montana was not found by a legal grand jury of the territory, in that it was not composed wholly of citizens of the United States, that one of the grand jurors who found and returned the indictment was an alien, and therefore the indictment was absolutely null and void. It was there held that the fact that an alien was on the grand jury that found the indictment against the petitioner "did not deprive the court of its jurisdiction for his trial under the indictment. The objection, if it be one, goes only to the regularity of the proceedings, not to

the jurisdiction of the court." See, also, In re Wood, supra.

In Pearce v. Texas, 155 U. S. 311, 15 S. Ct. 116, 117, 39 L. Ed. 164, Pearce was indicted in Alabama in conformity with the Code of Alabama authorizing an indictment without allegations as to the time or place of the commission of the crime, and the indictment contained no such allegations. The Governor of Alabama having made demand for rendition of Pearce upon the Governor of Texas, the latter issued his warrant for the arrest and return of Pearce to Alabama; and, while he was in the custody of the agent of the state of Alabama to be transported to Mobile for trial, he sued out a writ of habeas corpus before the judge of the Forty-Second district of the state of Texas, praying to be discharged. The district judge denied the discharge and remanded him to the custody of the agent. Pearce then appealed to the Court of Criminal Appeals of the state of Texas, the court of last resort in criminal matters, where the decision below was affirmed. 32 Tex. Cr. R. 301, 23 S. W. 15. The case was then transferred to the Supreme Court of the United States on writ of error. In the Supreme Court it was stated that the question at issue resolved itself "into one of the validity of the statute [the Code of Alabama] on the ground of its repugnancy to the constitution, and the court of appeals declined to decide in favor of its validity." In considering the matter, the Supreme Court said:

"What the state court [of Texas] did was to leave the question as to whether the statute was in violation of the constitution of the United States, and the indictments insufficient accordingly, to the demanding state. Its action in that regard simply remitted to the courts of Alabama the duty of protecting the accused in the enjoyment of his constitutional rights, and if any of those rights should be denied him, which is not to be presumed, he could then seek his remedy in this court."

In other words the court held that the constitutionality of the statute or Code of Alabama under which the indictment was found was, in rendition proceedings, a question which was, in the first instance at least, to be passed upon by the court of the demanding state in which the trial was to be had, and that the court of Texas did not err in denying the petition for habeas corpus and remanding the prisoner to the custody of the agent of Alabama for removal to that state.

Kaizo v. Henry, High Sheriff of Hawaii, 211 U. S. 146, 29 S. Ct. 41, 53 L. Ed. 125,

was a writ of error from the Supreme Court of the United States to the Supreme Court of the territory of Hawaii. There Kaizo was indicted for murder by a grand jury at a term of the Circuit Court of that territory. The grand jury was composed of sixteen members. A plea in abatement was seasonably filed alleging that eight of the grand jurors were not citizens of the United States or of the territory, a qualification prescribed by the laws of the territory. Whether the facts stated in the plea were true or not, it was agreed that the eight grand jurors were citizens only by virtue of a judgment of naturalization in a Circuit Court of the territory. The trial court overruled the plea in abatement, holding that the Circuit Courts of the territory had jurisdiction to naturalize, subject to exceptions. Kaizo was found guilty and sentenced to death. He then prosecuted a writ of error from the Supreme Court of the territory, assigning as error the overruling of the plea in abatement. That court affirmed the judgment below and the Governor of the territory thereupon issued a death warrant commanding the High Sheriff to execute the sentence. No writ of error was taken to this judgment from the Supreme Court of the United States. Kaizo, however, filed a petition for a writ of habeas corpus in the Supreme Court of the territory, basing his claim on the facts set out in his plea of abatement and agreed to as above stated, alleging that the indictment was void and the trial court was without jurisdiction to proceed under it. The writ of habeas corpus was discharged, and the petitioner remanded to the custody of the High Sheriff. It was to that judgment that the writ of error from the Supreme Court of the United States was directed. As to the question "whether the eight members of the grand jury, whose qualifications were questioned, were naturalized by courts having the authority to naturalize aliens," the court found "no occasion to decide or consider this question"; that, if Kaizo had desired the judgment of the Supreme Court upon that question, he should have brought a writ of error to the judgment of the Supreme Court of the Territory; that he could not, by habeas corpus, raise "questions not affecting the jurisdiction of the court which convicted him, which were open to him in the original case, and, if properly presented then, could ultimately have come to this court upon writ of error." Having determined that the composition of the grand jury finding the indictment did not affect the jurisdiction of the court to hear the case upon the indictment, it said:

"Disqualifications of grand jurors do not destroy the jurisdiction of the court in which an indictment is returned, if the court has jurisdiction of the cause and of the person, as the trial court had in this case. Ex parte Harding, 120 U. S. 782, 7 S. Ct. 780, 30 L. Ed. 824; In re Wood, 140 U. S. 278, 11 S. Ct. 738, 35 L. Ed. 505; In re Wilson, 140 U. S. 575, 11 S. Ct. 870, 35 L. Ed. 513. See Matter of Moran, 203 U. S. 96, 104, 27 S. Ct. 25, 51 L. Ed. 105. The indictment, though voidable, if the objection is seasonably taken, as it was in this case, is not void. United States v. Gale, 109 U. S. 65, 3 S. Ct. 1, 27 L. Ed. 857. The objection may be waived, if it is not made at all or delayed too long. This is but another form of saying that the indictment is a sufficient foundation for the jurisdiction of the court, in which it is returned, if jurisdiction otherwise exists. That court has the authority to decide all questions concerning the constitution, organization, and qualification of the grand jury, and, if there are errors in dealing with these questions, like all other errors of law committed in the course of the proceedings, they can only be corrected by writ of error."

The Matter of Moran, 203 U. S. 96, 102, 27 S. Ct. 25, 26, 51 L. Ed. 105, was a petition for writ of habeas corpus to the Supreme Court alleging the judgment of conviction for murder under which Moran was held was void and stating the ground in support of the petition to that court to be the want of jurisdiction of the trial court. There the indictment was claimed to be void for the reason that it was found by a grand jury, some of whom were not electors of the territory of Oklahoma and some of whom were nonresidents, and the trial judge, in summoning them for service, did so in violation of a law of Oklahoma. The Supreme Court denied the writ. After considering a certain question, it said:

"But it is proper to add that while the reason which we have given is logically the first to be considered by this court, we do not mean to give any countenance to the notion that, if the law was disobeyed, it affected the jurisdiction of the court. Ex parte Harding, 120 U. S. 782, 7 S. Ct. 780, 30 L. Ed. 824; In re Wilson, 140 U. S. 575, 11 S. Ct. 870, 35 L. Ed. 513.

In Glasgow v. Moyer, 225 U. S. 420, 429, 32 S. Ct. 753, 756, 56 L. Ed. 1147, the court, after reviewing the cases, said:

"The principle of the cases is the simple one that if a court has jurisdiction of the case, the writ of habeas corpus cannot be em-

ployed to *re-try* [italics ours] the issues, whether of law, constitutional or other, or of fact."

That statement was made in a case where a trial had been had and it had special reference to that fact. The court might as well have said that "if a court had jurisdiction of the case the writ of habeas corpus cannot be employed to *try or re-try* the issues, whether of law, constitutional or other, or of fact." See, also, Felts v. Murphy, 201 U. S. 123, 26 S. Ct. 366, 50 L. Ed. 689.

Andrews v. Swartz, 156 U. S. 272, 15 S. Ct. 389, 391, 39 L. Ed. 422, was a case where the indictment was found by a grand jury upon which persons of the colored race had been excluded because of their race or color. After conviction in the state court, Andrews applied to the federal Circuit Court for New Jersey for a writ of habeas corpus. That court denied the application, and the case was taken on writ of error to the Supreme Court. After pointing out that Andrews should have prosecuted a writ of error from the Supreme Court of the United States to the highest court of the state, the court said:

"Even if it be assumed that the state court improperly denied to the accused, *after he had been arraigned, and pleaded 'Not guilty,'* [italics ours] the right to show by proof that persons of his race were arbitrarily excluded by the sheriff from the panel of grand or petit jurors solely because of their race, it would not follow that the court lost jurisdiction of the case, within the meaning of the well-established rule that a prisoner under conviction and sentence of another court will not be discharged on habeas corpus unless the court that passed the sentence was so far without jurisdiction that its proceedings must be regarded as void. Ex parte Siebold, 100 U. S. 371, 375 [25 L. Ed. 717]; In re Wood, 140 U. S. 278, 287, 11 S. Ct. 738 [35 L. Ed. 505]; In re Shibuya Jugiro, 140 U. S. 291, 297, 11 S. Ct. 770 [35 L. Ed. 510]; Pepke v. Cronan, 155 U. S. 100, 15 S. Ct. 34 [39 L. Ed. 84]. When a state court has entered upon the trial of a criminal case, under a statute not repugnant to the constitution of the United States, and has jurisdiction of the offense and of the accused, no mere error in the conduct of the trial should be made the basis

of jurisdiction in a court of the United States to review the proceedings upon writ of habeas corpus."

Counsel for Crawford contend that these cases are not applicable for, if he were remitted to Virginia and seasonably and properly raised the question here under consideration and the question was decided against him, at the present time and under the Judiciary Act of 1925, he could not, as of right, prosecute a writ of error from the Supreme Court of the United States to the highest court of the state of Virginia to which the case could be taken. It is true that his right of review by writ of error from the Supreme Court of the United States on the facts of this case was taken away by the act of 1925, for under the law as it now stands no writ of error lies from the Supreme Court in this case, as the grand jury was not drawn under a statute of the state of Virginia which violated the Constitution of the United States. 43 Stat. 936, 937, c. 229, §§ 237 (28 USCA § 344). He is, however, permitted by that act to apply to that court for certiorari, a discretionary writ. South Carolina v. Bailey, supra. If review on such application is not granted he undoubtedly, at that stage of the proceeding, could have the matter reviewed on habeas corpus in the proper federal court, being without review in the Supreme Court on writ of error as of right. In re Royall, 117 U. S. 241, 252, 253, 6 S. Ct. 734, 29 L. Ed. 868; In re Wood, supra, 140 U. S. at pages 289, 290, 11 S. Ct. 738, 35 L. Ed. 505. It would not then be an endeavor by habeas corpus to intervene before trial or to review what ordinarily can be reexamined only on writ of error; and the federal court applied to could not, under such circumstances, properly refuse review on habeas corpus.

Our conclusion is that the District Court erred in holding that the indictment was void and discharging the prisoner, and our order is:

The order of the District Court is vacated, and the case is remanded to that court, with directions to enter an order remanding the prisoner to the custody of Frank Hale for execution of the warrant of the Governor of Massachusetts.