UNITED STATES ex rel. INNES v. HIATT,
Warden, et al.

SAME v. STIMSON, Secretary of War, et al.

Nos. 8455, 8536.

Circuit Court of Appeals, Third Circuit.

Submitted on briefs Feb. 21, 1944.

Decided March 15, 1944.

Appellant for himself.

Herman F. Reich, Asst. U. S. Atty., of Lewisburg, Pa., for appellee.

Before MARIS and JONES, Circuit Judges, and BARD, District Judge.

MARIS, Circuit Judge.

█ These are appeals by the relator from two orders of the district court dismissing his petitions for writs of habeas corpus. The facts are sufficiently stated in the opinions of the district court, 50 F. Supp. 756, 52 F.Supp. 425, and need not be repeated here. The district court declined to issue the writs and dismissed the petitions because it concluded that the facts alleged by the petitioner did not make out a case for habeas corpus. The basic issues which the relator sought to raise were all involved in a prior habeas corpus application made by him in the Eastern District of New York and were decided adversely to him by the district court and on appeal by the Circuit Court of Appeals for the Second Circuit.[1] United States ex rel. Innes v. Crystal, 131 F.2d 576, certiorari denied 319 U.S. 755, 63 S.Ct. 1164, 87 L. Ed. 1708, rehearing denied 319 U.S. 783, 63 S.Ct. 1173, 87 L.Ed. 1727.

█ The relator urges that the Circuit Court of Appeals for the Second Circuit did not pass upon certain of his present contentions including his contention that the general court-martial which convicted him of assault with intent to commit sodomy lost its jurisdiction over him because it heard the trial judge advocate in his absence, a procedure which, he contends, violated the due process clause of the fifth amendment to the Constitution. The circuit court of appeals stated that it did not deem it necessary to pass upon this contention because it found that the record of the trial did not disclose the facts to be as alleged by the relator. Upon these appeals, however, we must assume that the relator's allegations are true[2] since the question before us is whether the district court erred in refusing the issuance of writs under which their truth might be inquired into. The relator's allegations raise the question whether the proceedings of the court-martial failed to accord him due process of law. Before we reach the merits of this contention we must consider whether the writ of habeas corpus is sufficiently broad to bring such a question within the purview of a civil court.

█ The writ of habeas corpus is used to obtain an adjudication of the alleged unlawfulness of a person's detention.[3] Where the detention is by virtue of a sentence of a court the inquiry is ordinarily concerned with the jurisdiction of the court. This was the rule as to the scope of inquiry in habeas corpus proceedings in which the confinement resulted from the sentence of a civil court.[4] It was likewise the rule where the confinement resulted from a judgment and sentence of a court-martial. Thus it was held that a civil court in habeas corpus proceedings could inquire whether the court-martial was properly constituted,[5] whether it had jurisdiction of the person and subject matter,[6] and whether it had power to impose the sentence which it did impose.[7] Only questions dealing with jurisdiction were thought to be proper subjects of inquiry.[8] In recent years, however, the use of the writ of habeas corpus in the federal courts to test the validity of a conviction for crime by a civil court has been extended to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused and where habeas

---

[1] The doctrine of res judicata does not extend to a decision on habeas corpus refusing to discharge the prisoner. However, in exercising the discretion conferred by the statute, 28 U.S.C.A. § 461 "to dispose of the party as law and justice require" the court may consider a prior refusal to discharge on a like application. Salinger v. Loisel, 1924, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989; Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302.

[2] Moreover we think that the record of the court-martial proceeding which the relator filed with his second petition does furnish support for his allegations. It discloses that certain proceedings of the character he describes which the reporter had included in the original transcript of the proceedings were deleted from the final record at the relator's instance because of his insistence that he was not present when they took place.

[3] McNally v. Hill, Warden, 1934, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

[4] Felts v. Murphy, 1906, 201 U.S. 123, 26 S.Ct. 366, 50 L.Ed. 689; Kaizo v. Henry, 1908, 211 U.S. 146, 29 S.Ct. 41, 53 L. Ed. 125; Glasgow v. Moyer, 1912, 225 U. S. 420, 32 S.Ct. 753, 56 L.Ed. 1147; Knewel v. Egan, 1925, 268 U.S. 442, 45 S. Ct. 522, 69 L.Ed. 1036.

[5] McClaughry v. Deming, 1902, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049.

[6] Ex parte Reed, 1879, 100 U.S. 13, 25 L.Ed. 538.

[7] Carter v. McClaughry, 1902, 183 U.S. 365, 22 S.Ct. 181, 46 L.Ed. 236.

[8] Collins v. McDonald, 1922, 258 U.S. 416, 42 S.Ct. 326, 66 L.Ed. 692.

666

corpus is the only effective means of preserving such rights. This is so where the alleged invasion of constitutional rights is founded upon the due process clause as well as where the specific guarantees of the Constitution are invoked.[9]

■ The question at once arises as to the circumstances under which a person convicted of a crime, who relies upon an abuse of power rather than a want of it, may in a habeas corpus proceeding be found to have been denied due process of law. This question has been cogently answered for us by Justice Roberts in Lisenba v. California, 1941, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166, in which case he said:

"As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial."

Justice Roberts cited as illustrations of what he meant by the denial of fundamental fairness which would amount to a deprivation of due process the cases of Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, in which the trial was dominated by mob violence in the courtroom, Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406, in which by reason of the fraud, collusion, trickery and subornation of perjury on the part of those representing the State the trial of the accused resulted in his conviction, and Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716, in which by threats or promises in the presence of court and jury a defendant was induced to testify against himself.

■ We think that this basic guarantee of fairness afforded by the due process clause of the fifth amendment applies to a defendant in criminal proceedings in a federal military court as well as in a federal civil court. An individual does not cease to be a person within the protection of the fifth amendment of the Constitution because he has joined the nation's armed forces and has taken the oath to support that Constitution with his life, if need be. The guarantee of the fifth amendment that "no person shall * * * be deprived of life, liberty, or property, without due process of law," makes no exception in the case of persons who are in the armed forces. The fact that the framers of the amendment did specifically except such persons from the guarantee of the right to a presentment or indictment by a grand jury which is contained in the earlier part of the amendment makes it even clearer that persons in the armed forces were intended to have the benefit of the due process clause. This is not to say that members of the military forces are entitled to the procedure guaranteed by the Constitution to defendants in the civil courts. As to them due process of law means the application of the procedure of the military law.[10] Many of the procedural safeguards which have always been observed for the benefit of defendants in the civil courts are not granted by the military law. In this respect the military law provides its own distinctive procedure to which the members of the armed forces must submit. But the due process clause guarantees to them that this military procedure will be applied to them in a fundamentally fair way. We conclude that it is open for a civil court in a habeas corpus proceeding to consider whether the circumstances of a court-martial proceeding and the manner in which it was conducted ran afoul of the basic standard of fairness which is involved in the constitutional concept of due process of law and, if it so finds, to declare that the relator has been deprived of his liberty in violation of the fifth amendment and to discharge him from custody. Accordingly the allegations of the relator must be examined to ascertain whether even if they were proved to be true it would still have to be concluded that he had failed to establish any fundamental unfairness in his trial by the court-martial which convicted him.

The relator alleges that on June 22, 1942,

---

[9] Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Chambers v. Florida, 1940, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Smith v. O'Grady, 1941, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859; Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302.

[10] Reaves v. Ainsworth, 1911, 219 U.S. 296, 31 S.Ct. 230, 55 L.Ed. 225.

after the evidence was all in and the summations had been made and after the court-martial had closed to deliberate upon its findings, the court, instead of proceeding to vote, called in the trial judge advocate in the absence of the relator, who was required to remain outside the courtroom, instructed the trial judge advocate to procure additional evidence, and then announced an adjournment until June 30, 1942 to receive the additional evidence. The relator states that on the latter date, no additional evidence being forthcoming, the court proceeded to vote upon the charges and convicted him. He makes two complaints with respect to these alleged occurrences.

The relator's first complaint is, in essence, that he was not permitted to be present at every stage of the proceedings because of the action of the court in conferring with the trial judge advocate in his absence. It is not alleged that any sinister or improper influence was then exerted by the trial judge advocate or that any witnesses were then called upon to testify or that any evidence was produced and used against the relator. All that the relator alleges took place was that the court-martial gave the trial judge advocate instructions to produce additional evidence at an adjourned session. The relator admits, however, as we have said, that no additional evidence was produced at the later session. Although it may be that this occurrence, if in fact it took place, was in violation of the 30th Article of War, 10 U.S.C.A. § 1501, and might therefore have afforded grounds for the military reviewing authority to disapprove the findings and sentence of the court-martial under the 47th Article, 10 U.S.C.A. § 1518, and remand the case for rehearing under Article 50½, 10 U.S.C.A. § 1522, it could not in our opinion have so seriously affected the fundamental fairness of the trial as to deprive the court under the fifth amendment of its jurisdiction to adjudge and sentence the relator. At most it amounted to a procedural error for which no inquiry in habeas corpus proceedings has ever been available.[11]

The relator's second complaint is that the failure of the court to vote on June 22d after closing the case and beginning deliberations on that day, and its action in suspending its deliberations, reopening the case for additional evidence and separating for eight days and at the end of that period without receiving additional evidence reconvening and completing its deliberations, was also a violation of the due process clause which deprived the court of its jurisdiction over him. We cannot agree. Assuming the facts to be as the relator states them, this also amounted, at the most, to no more than a procedural irregularity which, as has been indicated, was for the reviewing authority to correct, if it called for correction under military law. It was not, as the relator contends, analagous to the adjournment and dispersal of a jury during the course of its deliberations upon its verdict in a civil court. On the contrary it more nearly resembled the procedure of a civil trial judge sitting without a jury who takes time to consider his finding and meanwhile proceeds to other business. We think it could not have so affected the fairness of the trial afforded the relator as to amount to a deprivation of due process.

We have considered the other points raised by the relator and find those which were raised for the first time in the court below to be so wholly lacking in merit as to require no discussion here. Nor do we further discuss the points which the relator originally raised in the Second Circuit since we are fully in accord with the disposition of them by the Circuit Court of Appeals for that Circuit.

The orders of the district court are affirmed.

---

[11] In re Grimley, 1890, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636; Harlan v. McGourin, 1910, 218 U.S. 442, 31 S.Ct. 44, 54 L.Ed. 1101, 21 Ann.Cas. 849; In re Gregory, 1911, 219 U.S. 210, 31 S.Ct. 143, 55 L.Ed. 184.