### BEETS v. HUNTER et al.

### No. 1108.

District Court, D. Kansas, First Division.

Jan. 28, 1948.

Howard McCue, of Topeka, Kan., and Walt Allen, of Chickasha, Okl., for petitioner.

James W. Wallace, Asst. U. S. Atty., of Topeka, Kan., and Lt. Col. Nicholas R. Voorhis, J.A.G.D., of Washington, D. C., for respondents.

MURRAH, Circuit Judge.

Be It Remembered, on this 21st day of January, A.D. 1948, the above matter coming on for hearing before the Honorable Alfred P. Murrah, Judge of the United States Circuit Court of Appeals for the Tenth Circuit, assigned, and the parties appearing in person and/or by counsel as hereinabove set forth, the following proceedings were had:

### January 22, 1948.

The Court: We start with the proposition in this case, about which the Court assumes there is no dispute, that is, this petitioner was entitled to due process of law while in Germany fighting for his country and under the jurisdiction of the

Articles of War, 10 U.S.C.A. § 1471 et seq., the same as if he were walking the streets of Kansas City, Kansas. In other words, throughout the whole scheme of the Articles of War and military justice is contemplated the fundamentals of due process. You can't read the Articles of War without discerning the purpose to guarantee to one accused of crime the fundamentals of due process. The courts have laid that question at rest. See, United States v. Hiatt, 3 Cir., 141 F.2d 664.

█ I think it's conceded by the tenure of your argument that a court proceeding in habeas corpus has the power and the duty to inquire into those questions when properly presented. They are properly presented by the pleadings in this case. Of course the Articles of War and military justice have set up their own procedural devices for affording due process of law. Many of the procedural safeguards that are employed and thought necessary in the civil courts in order to afford the pro-. tection of the Constitution are absent in military justice. That certainly is not fatal, but it is contemplated that a soldier shall have the same fair and impartial trial in a courtmartial as he would in a civil court, and those are the tests, and those are the standards by which we judge the question whether this particular petitioner was afforded due process in the trial of this case.

█ It would serve no useful purpose for the Court to try to point out the findings of fact in this case. It is sufficient to say that they stand un'contradicted on the record. When he was charged with this offense the T.J.A. went to the stockade where he was confined and served the charges upon him, or at least advised him about it—interrogated him about it. He was informed at that time, that is, the trial judge advocate was informed by the petitioner, that he wished to have a certain party, to wit, Lt. Fox—no, the Court is mistaken about that. When Captain Morgan called upon him as the appointed defense counsel, Captain Morgan was informed that he wished to have Lt. Fox represent him, whereupon Captain Morgan left him and went back, leaving the impression at least that he would have Lt.

Fox call him. Lt. Fox did not see this petitioner; instead, Captain Morgan returned and on the day before the trial was furnished a copy of the charges. He confesses on the witness stand that he was wholly incompetent to represent him, and he also makes it plain, manifestly plain, too plain for mistake, that he did so only on orders—acting under orders as a soldier.

The trial of this case in the eyes of both the prosecution and the defense was wholly obnoxious and repulsive to their fundamental sense of justice, and that is the test by which this Court should judge it.

The Court has no difficulty in finding that the court which tried this man was saturated with tyranny; the compliance with the Articles of War and with military justice was an empty and farcical compliance only, and the Court so finds from the facts and so holds as a matter of law.

He could not have received due process of law in a trial on a court before men whose judgments did not belong to them, who had not the will nor the power to pass freely upon the guilt or innocence of this petitioner's offense, the offense for which he was charged. It cannot stand the test of fundamental justice. It may have been prompted by the exigencies of war, but it can't stand in the light of cold reason and justice as we love it and for which this petitioner was fighting when he was arrested.

I don't want to be eloquent—that is not my purpose—but those are just plain facts to me as one whose duty it is to pass upon the principles of due process of law as they are measured by civilized society.

It will be the judgment of this Court that the petitioner be discharged now and that he be allowed to proceed upon his own recognizance.

Now, stand up, Mr. Petitioner. (Petitioner stood up.)

They have a right of appeal from this judgment, and you are walking out of this courtroom on your own recognizance. That means if it becomes proper in the course of the administration of justice to remand you to the custody of the warden

that you will be available. Do you understand that?

The Petitioner: Yes, sir.

The Court: And don't you leave or go anywhere. You go back to your home, wherever that is, but you keep in contact with the Clerk of this court at all times.

The Petitioner: Yes, sir.

The Court: Do you understand that?

The Petitioner: Yes, sir.

The Court: And you tell the Court you will do that.

The Petitioner: Yes, sir.

The Court: Be seated. That is all.