Whitaker, Judge,
dissenting:
We are not called upon in this case to declare unconstitutional an Act of Congress. Article 60 of the articles for the government of the Navy (34 U. S. C., sec. 1200; 1946 Ed.) has no application to the facts of this case. It applies only to cases “not capital, nor extending to the dismissal of a commissioned or warrant officer.” In the instant case plaintiff, a warrant officer, was dismissed from the service; hence, the statute has no application.
*330 The question is whether an accused has the constitutional right in courts-martial to be confronted by the witnesses against him. That he has admits of no doubt, unless it be true that a citizen forfeits his rights of citizenship when he enters the service of his country in the naval or military forces. The Bill of Rights, in the Sixth Amendment to the Constitution, says, “In all criminal prosecutions, the accused shall enjoy the light * * * to be confronted with the witnesses against him. * * *”
It would hardly seem necessary to cite authority for the statement that an accused is entitled to this fundamental right as much in a court-martial proceeding as in the civil courts. But if authority is wanted, it is to be found in Burns v. Wilson, 346 U. S. 137; Schita v. King, 133 F. 2d 283; United States ex rel. Innes v. Hiatt, et al., 141 F. 2d 664; Shapiro v. United States, 107 C. Cls. 650; 69 F. Supp. 205.
When the accused was put to trial he was not confronted with the witnesses against him. Two of the witnesses, whose testimony before the Court of Inquiry was used against the accused, refused to testify in the court-martial proceedings. The findings show that at some stage of the proceedings before the Court of Inquiry the accused was made a party thereto, whatever that may signify; but they also show that some of the questions propounded to the witnesses whose testimony was read in the subsequent proceedings were propounded before plaintiff was made a party and some after. Whether plaintiff was given the right of cross-examination does not appear.
But, be that as it may, the Constitutional provision giving the accused the right to be confronted with the witnesses against him refers to the trial when Ms right to life and liberty is put in jeopardy; when, as the result of the trial, he might be sentenced to death or imprisonment. This could not be done by the Court of Inquiry. Its function was merely to inquire if the accused should be put to trial. It had no right to punish. Only the court-martial had this right. It was at the court-martial trial that the accused had the right to be confronted with the witnesses against him. This right was denied him.
*331 Tbe rights guaranteed by the Bill of Bights were considered by our forefathers as a blood-bought heritage, to be handed down to their children, and to their children’s children. They refused to leave to chance that it would be respected by the law-makers and the courts. They wrote it in the Bill of Bights as the price of their adoption of the Constitution. To them and to me these rights are more precious than the conviction of an accused, however guilty I may think him to be.
I respectfully dissent.
FINDINGS OF FACT
The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Mastín G. White, makes the following findings of fact:
1. This is a suit for the collection of pay and allowances allegedly due the plaintiff as a warrant officer in the United States Marine Corps for the period subsequent to his dismissal from the service in accordance with a sentence imposed upon the plaintiff by a general court-martial. The plaintiff contends that his dismissal was illegal.
2. The plaintiff enlisted in the United States Marine Corps on March 9, 1933, and served as an enlisted man until his appointment as a warrant officer. Plaintiff was appointed a warrant officer (QM), United States Marine Corps, on September 20,1946, to rank from September 30,1946. This appointment was accepted by the plaintiff on November 12, 1946.
3. On January 10,1948, while the plaintiff was serving as a warrant officer in the United States Marine Corps, he was brought to trial at Tsingtao, China, before a general court-martial convened by order of the Commanding General, Fleet Marine Force, Western Pacific, on the following charges and specifications:
CHARGEi
RECEIVING ARTICLES FOR FREIGHT AND TRAFFIC
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, U. S. Marine Corps, while so serving on temporary *332 duty with the Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific, Tientsin, China, did, during the period from July 15, 1947, to July 80, 1947, exact dates to the relator unknown, wilfully, knowingly, and without authority from the President of the United States or Secretary of the Navy, receive and cause to be received on board the duty station to which he was then and there attached, eight cases of merchandise for freight and traffic, well knowing the said merchandise did not consist of gold, silver or jewels for freight or safekeeping, and further well knowing that the said merchandise did consist of furs, to wit, approximately ten thousand laska skins, approximately one thousand five hundred black kidskins, and approximately one thousand kolinsky skins.
CHARGE H
SCANDALOUS CONDUCT TENDING TO THE DESTRUCTION OP GOOD MORALS
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, U. S. Marine Corps, while so serving on temporary duty with the Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific, Tientsin, China, did, on or about July 18,1947, at the aforesaid regiment, unlawfully and wrongfully conspire and cause a false and fraudulent United States government bill of lading to be -prepared and used by the aforesaid regiment, whereby a civilian, to wit, a Mr. Carlo Mina, could ship automobiles at government expense, well knowing that said shipment of civilian property at government expense was unauthorized, illegal, and not in the public interest.
charge in
FALSEHOOD
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, U. S. Marine Corps, while so serving on temporary duty with the Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific, Tientsin, China, did, during the period from July 1,1947, to July 30, 1947, exact date to the relator unknown, cause to be delivered to the Shipping and Receiving Section, Seventh Service Regiment, Service Command, Fleet
*333 Marine Force, Pacific, Tientsin, China, a written request for shipment of personal effects, in part, as follows:
“From: wo. burtaN [sic] e. graham (031226) tjsmo BE — 534244
To: The Shipping and Receiving Section, Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific.
Subject: Shipment of Personal effects, request for. Reference: la) Letter of instruction 1313 dtd 13Jul 46.
(b) ALNAV 423
1. As authorized in reference (a), it is requested that shipment of my personal effects to be made to the f ollow-ing adress [sic] :
WO. BURTAN [sic] E. GRAHAM (031226) USMC
2787 CALIFORNIA STREET,
SAN ERANCISCO, CALIFORNIA.
2. This Shipment marked in compliance with reference (b), strapped with metal strap on each face of the box consist of,
us00 108 one box 1 8.5 254 total cube. 69.0
109 one box 3#2 8.5 254 total weight. 2,042
110 one box #3 8.5 247
111 one box #4 8.5 248
112 one box #5 8.5 254
113 one box #6 8.5 247
114 one box #7 9.0 270
115 one box #8 9.0 268
3. In compliance with reference (a), I hereby certify that the effects covered by this request for shipment contains no live ammunition, hand grenades, explosives of any kind or other articles dangerous to life.
(SIGNED) BURTON E. GRAHAM.
BURTAN [sic] E. GRAHAM
WO. (031226) USMC”
he, the said Graham, well knowing that the aforesaid request contained a false representation, namely the representation : “my personal effects”, whereas in truth and in fact, he, the said Graham, well knew that the said effects were furs, said furs not being the personal property of the said Graham, and in which he, the said Graham, had no legal nor equitable interest, which said representation was knowingly false and intended to deceive, as he, the said Graham, well knew.
*334 CHARGE IV
conduct UNBECOMING AN OFFICER AND A GENTLEMAN
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, U. S. Marine Corps, while so serving on temporary duty with the Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific, Tientsin, China, did, on or about September 2,1947, cause to be presented to the Consulate of the United States of America, Peiping, China, a written request for consular invoice covering the shipment of certain cases of furs, in part, as follows :
* * * Burton E. Graham of Peiping, (China) * * *
STATEMENT OF PURCHASE
Black Kidskin plates and Raw Laska & Kolinsky skins
Bate of purchase: May24,1947
Dealers name: KwangHwa Shih YehShangHong
dealers ADDRESS: 4, Dairen Road, 10th Ward, Tientsin 47, Tung Tanzse Hutung, Peiping
1500 Black Kidskin plates cnc 110, 000.— cnc 165,000,000.—
10000 Raw Laska skins cnc 14, 000.— cnc 140, 000,000.—
1250 Raw Kolinski skins cnc 49,000.— cnc 61,250,000.—
cnc 366,250, 000.—
August 16th, 1947
* * * Purchaser-consignee Burton E. Graham. San Francisco, Cal. USA * * * Seller-consignor Burton E. Graham, Peiping (China)
(signed) Burton E. Graham”
he, the said Graham, well knowing that the aforesaid request contained false representations, namely the representations: “Burton E. Graham of Peiping, China’’, “Purchaser-consignee Burton E. Graham”, “date of purchase: May 24th, 1947”, and “cnc$366,250,000.00” whereas in truth and in fact, he, the said Graham, well knew that his residence was Tientsin, China, that he, the said Graham, was not the purchaser-consignee, and that no consideration had been paid by him, the said Graham, or on his behalf in any lawful currency or other medium *335 of exchange to cover the selling or cost price of the subject furs; which said representations were knowingly false and intended to deceive, as he, the said Graham, well knew, and he, the said Graham, did therein and thereby exhibit a disregard of his obligations as an officer and a gentleman.
CHARGE v
VIOLATION OE A LAWFUL REGULATION ISSUED BY THE SECRETARY OP THE NAVY
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, IJ. S. Marine Corps, while so serving on temporary duty with the Seventh Service Regiment,. Service Command, Fleet Marine Force, Pacific, Tientsin, China, did, during the period from July 15, 1947, to September 30, 1947, exact date to the relator unknown, wrongfully and unlawfully request and direct the Shipping and Receiving Section of the said Seventh Service Regiment, to ship to the United States of America, as his personal effects, eight cases containing furs, said furs being dutiable under the customs regulations of the said United States of America, as he, the said Graham, well knew, and the said shipping and receiving section, did, pursuant to and in accordance with said request and direction take charge of and ship to the said United States of America said eight cases containing furs as aforesaid and he, the said Graham, did by means of said wrongful and unlawful request and direction, therein and thereby, knowingly, wilfully and without proper authority cause to be imported in a public vessel articles which are liable to the payment of duty.
CHARGE VI
CONDUCT TO THE PREJUDICE OF GOOD ORDER AND DISCIPLINE
SPECIFICATION
In that Burton Edward Graham, 031226, warrant officer, U. S. Marine Corps, while so serving with the First Marine Division (Reinforced), Fleet Marine Force, Tientsin, China, until June 18, 1947, and further while so serving on temporary duty with the Seventh Service Regiment, Service Command, Fleet Marine Force, Pacific, Tientsin, China, from June 18,1947, to September *336 30, 1947, did, during the period from April 1, 1947, to September 1,1947, exact date to tbe relator unknown, unlawfully and wrongfully import and cause to be imported eertain automobiles, to wit, one 1946 Buick sedan and one 1947 Studebaker sedan, in violation of the regulations of the Board for the Temporary Regulation of Imports of the Republic of China, providing in part, in tenor, as follows:
“Schedule xv. articles the import op which is prohibited * * * Tariff No 256b (part) Automobiles with 7 passenger capacity or less whose net f. o. b. factory cost to dealers exceeds u. s. $1,200 or equivalent, and chassis thereof.”
he, the said Graham, well knowing that the net freight on board factory cost to dealers of the said cars was in excess of twelve hundred dollars United States currency, and that the passenger capacity of said cars was less than seven passengers.
4. During the trial of the plaintiff by general court-martial, Hugo Boellhoff, who had been called to testify as a witness for the prosecution, refused to take an oath or to testify. Thereafter, the judge advocate of the court-martial produced the record of the proceedings previously had before a court of inquiry convened by the Commanding General, Fleet Marine Force, Western Pacific, at Tsingtao, China. The plaintiff had been made a party to the court of inquiry proceedings after such proceedings had begun. The judge advocate of the court-martial offered in evidence before the court-martial a portion of the court of inquiry record containing testimony which Hugo Boellhoff had given in the court of inquiry proceedings, the offer being restricted to the testimony which Boellhoff had given after the plaintiff was made a party to the court of inquiry proceedings. The plaintiff objected to the proposed restriction; and he moved that the entire record of the proceedings of the court of inquiry be admitted in evidence before the court-martial. The court-martial sustained the plaintiff’s contention that the admission of Boellhoff’s recorded testimony should not be restricted to the testimony that Boellhoff had given in the court of inquiry proceedings after the plaintiff was made a party to those proceedings; but the court-martial did not sustain the plaintiff’s motion that the entire court of inquiry record be *337 admitted in evidence. Thereupon, the judge advocate, as the legal custodian of the court of inquiry record, took the stand as a witness for the prosecution and read from such record questions propounded to, and answers given by, Hugo Boell-hoff in the court of inquiry proceedings to prove the offenses alleged in charges I, III, IV, and V of the court-martial case. Some of the recorded questions and answers had been asked and given before, and some after, the plaintiff was made a party to the court of inquiry proceedings.
5. During the trial of the plaintiff by general court-martial, I. Krinkevitch, who had been called to testify as a witness for the prosecution, refused to take an oath or to testify. The judge advocate of the court-martial subsequently offered in evidence the portion of the court of inquiry record referred to in finding 4 above that contained the testimony given by I. Krinkevitch in the court of inquiry proceedings. The plaintiff objected on the ground that such recorded testimony would be inconsistent with the unsworn statement that I. Krinkevitch had made before the court-martial in refusing to testify at the court-martial trial. The court-martial did not sustain the plaintiff’s objection. Thereupon, the judge advocate, as the legal custodian of the court of inquiry record, took the stand as a witness for the prosecution and read from such record questions propounded to, and answers given by, I. Krinkevitch in the court of inquiry proceedings to prove the offenses alleged in charges I, III, IV, and V of the court-martial case.
6. Some of the exhibits that had been introduced in evidence before the court of inquiry referred to in findings 4 and 5 above were also introduced in evidence by the prosecution at the court-martial trial of the plaintiff to prove the offenses alleged in charges II, III, IV, and V. The plaintiff objected to the admission of such evidence without also admitting the entire record of the proceedings of the court of inquiry in evidence before the court-martial, but his objections were not sustained by the court-martial.
7. During the plaintiff’s trial by general court-martial, the judge advocate of the court-martial offered in evidence an incriminating written statement that the plaintiff allegedly had prepared and signed prior to the trial. The plaintiff *338 objected, and, at Ms own request, be took the witness stand for the limited purpose of testifying with respect to matters bearing on the admissibility of the written statement. While being cross-examined, the plaintiff was asked by the judge advocate whether the written statement was a true statement. The question was objected to by the plaintiff on the ground that the statement had not been made under oath. The court-martial did not sustain the objection; and, the question being repeated, the plaintiff replied that he believed that the statement was a true statement. The written statement was admitted in evidence over the plaintiff’s objection.
8. On February 28, 1948, after the general court-martial trying the plaintiff had held sessions at Peiping and Tientsin as well as at Tsingtao, the court-martial found that the specifications of all the charges had been proved, with certain exceptions and substitutions that were made by the court-martial in the specifications of charges V and VI; and the court-martial found that the plaintiff was guilty of all the charges.
9. Pursuant to its findings of guilty, the general court-martial on February 28, 1948, sentenced the plaintiff to be dismissed from the United States Marine Corps and from the United States naval service.
10. The proceedings, findings, and sentence of the genera] court-martial in the plaintiff’s case were approved by the convening authority on March 25,1948.
11. The proceedings, findings, and sentence of the general court-martial in the plaintiff’s case, and the action of the convening authority thereon, were approved by the Acting Secretary of the Navy on September 23,1948, except that the findings on charge I and on the specification thereunder, and the action of the convening authority thereon, were set aside.
12. In accordance with the sentence of the general court-martial, as approved by the convening authority and by the Acting Secretary of the Navy, the plaintiff was dismissed from the United States Marine Corps and from the United States naval service on October 5,1948, by order of the Acting Secretary of the Navy.
13. The plaintiff has exhausted all his administrative remedies, and has been denied relief by the Board for the Cor *339 rection of Naval Records and by the Judge Advocate General of the Navy.
CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is therefore dismissed.