(No. 22511.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN BONGIORNO, Plaintiff in Error.

*Opinion filed October 19, 1934.*

THOMAS J. McCORMICK, (W. W. O'BRIEN, and W. G. ANDERSON, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

Kenneth Smith, alias Ross King, and the plaintiff in error, John Bongiorno, were indicted and convicted in the criminal court of Cook county for the murder of Harry

Redlich, a police officer. King was sentenced to death and has been executed. Bongiorno was sentenced to the penitentiary for a term of 199 years.

Neither defendant testified and there is no material controversy over the facts. About noon on July 8, 1933, the defendants entered the offices of John W. Compton. As we understand the evidence, the office suite was on the third floor of the building and consisted of a large room and two adjoining rooms. The entrance from the general hallway was into the large room. A passenger elevator was located some distance from the office entrance. Near the elevator was a stairway which led from the ground floor. When the defendants entered the office King had a gun in his hand and ordered all present to stick up their hands. Bongiorno closed the entrance door and stood with his back to it. King compelled everyone in the room to face the wall. He then rifled their pockets and took whatever money and valuables he found. He ordered the safe to be opened and took from it some money and stamps. The victims were tied with rope or cord. Charlotte Taylor, an employee of Compton, was attracted by the strange action of the men as they entered the office and in some manner got out of it. She went down-stairs and notified police officer Redlich. He proceeded up-stairs, where he found the entrance door to the office closed. He demanded admission, and Bongiorno asked, "Who's there?" Redlich replied, "Open up; this is a police officer." His words were evidently heard by both defendants. King smashed a screen in one of the windows and jumped to a roof not far below. He then dropped from the roof to the street. Bongiorno opened the door and in answer to the officer's question what he was doing there, said he was trying to sell a man some insurance. The officer compelled him, at the point of his revolver, to raise his hands and proceed down the hallway to a point near the elevator and stairway. When they stopped, Bongiorno had his back to the

wall and faced the stairway. The officer's back was toward the stairway. Bongiorno was endeavoring to obtain his release by means of false statements to the officer. While he was so engaged King came up the stairway. Redlich, having his back to it, did not know of King's approach. When the latter got within a very short distance of the officer he fired three shots with his revolver. One of the bullets struck Redlich in the back, near the spine, causing his death. Bongiorno was not armed.

It is the contention of the plaintiff in error that he was not a participant in the murder; that he was then under arrest and in the custody of an officer; that about five minutes had expired after the robbery was completed; that the evidence fails to show any previous design or plan to kill; that he neither aided nor abetted in the killing, and that under the circumstances shown by the record he was not guilty of murder.

It is the rule that to constitute one guilty of a crime as principal or as an accessory he must be present or participate or do some act at the time of the commission of the offense in furtherance of a common design, or if not present it must be shown that he by some affirmative act actually advised, encouraged, aided or abetted in the perpetration of the crime. (*People* v. *Richie,* 317 Ill. 551.) It is also a recognized principle of law that where two or more persons are engaged in a conspiracy to commit robbery and an officer is murdered while in immediate pursuit of either or both of the offenders who are attempting escape from the scene of the crime with the fruits of the robbery, either in possession of one or both, the crime of robbery is not complete at the time of the murder, inasmuch as the conspirators had not then won their way, even momentarily, to a place of temporary safety, and the possession of the plunder was nothing more than a scrambling possession. (*People* v. *Boss,* 210 Cal. 245, 290 Pac. 881.) Here the uncontradicted evidence shows that the conspirators de-

signed to commit the crime of robbery through the use of a deadly weapon. That use included the intimidation of the victims and the means of the offenders' escape. Under such circumstances the intent to kill, if necessary, in obtaining and carrying away the loot is established. A plan to commit robbery would be futile if it did not comprehend an escape with the proceeds of the crime. These factual circumstances are inseparable. Unless the plan of robbery is to terrify the victim, and, if occasion requires, to kill any person attempting to apprehend them at the time of or immediately upon gaining possession of the property, it would be inane and child-like. Here Bongiorno was attempting to gain his release and make his escape from the scene of the crime not by the use of a deadly weapon, for he had none, but his endeavors were by persuasion and false representations. He knew that his co-conspirator was armed with a gun. He knew that he had gone out of Compton's office. He saw him come up the stairway with gun in hand, behind the officer, and shoot him in the back. He gave no warning of King's approach, but when the officer reeled and fell he ran and attempted to hide away. He concealed himself until he was arrested by other police officers. It is vain to argue that the killing was not included as a part, if necessary, in the commission of the crime which both Bongiorno and King had deliberately planned.

Counsel for plaintiff in error, in commenting on King's return to the third floor of the building, says: "For some curious reason, evidently he [King] decided to go up-stairs to see what had become of his co-defendant, John Bongiorno." This statement cannot have been made seriously. King knew that a police officer had demanded admission through the door which Bongiorno was guarding and that Bongiorno had not come down-stairs. He must have inferred that Bongiorno was in the custody of the officer. To us the conclusion is irresistible that he went back with

a murderous intent to extricate his co-conspirator from the toils of the law and to successfully effectuate their plan of robbery.

Plaintiff in error places much reliance upon *White* v. *People,* 139 Ill. 143, but the facts in the *White case* have many essential differences from those in this case. White and his confederate had burglarized a store in Flora and successfully made their escape. Three days later they appeared in Assumption and sold some revolvers, which were a part of the loot, at prices below cost. Jordan, the village marshal of Assumption, was apprised of the facts and went in search of the men. He found them along a railroad right of way, where he sat and talked with them. Robbins, one of the confederates, arose and started away. Jordan displayed his police star, whereupon Robbins shot him and made his escape. White was standing by the track but ran after Jordan was shot. White was afterwards arrested, and this court reversed a conviction on the ground that the evidence failed to show any design between him and Robbins to kill Jordan or to resist arrest at that time. Robbins and White did not know Jordan was an officer until he made an acknowledgment of the fact, and there was no opportunity for any combination between them, under the circumstances. We said: "It is true that the plaintiff in error would have been responsible if he had aided, or abetted, or advised, or encouraged Robbins in his unlawful conduct by signs or motions." The essential facts which were lacking in the *White case* are present in this case. The killing was at the very scene of the crime and in the hallway through which the robbers entered. It was within the duration of time necessary to arrive at and depart from the place of robbery. "He who enters into a combination or conspiracy to do such an unlawful act as will probably result in the unlawful taking of human life must be presumed to have understood the consequences which might reasonably be expected to flow from carrying

it into effect and also to have assented to the doing of whatever would reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life." *McMahon* v. *People,* 189 Ill. 222.

It is complained that the trial court erred in refusing to give certain instructions tendered by the respective defendants. Refused instruction No. 1 was not given because it assumed that the crime of robbery and the crime of murder were so separate and distinct from each other in point of time that it became the duty of the State to establish by evidence a new combination and design to kill, formed in the interval between the commission of the crimes. The instruction was properly refused.

The second refused instruction stated that if the jury found Bongiorno was under arrest at the time of the shooting and did not resist the officer, then the burden is on the State to prove, beyond a reasonable doubt, that the defendant resisted the officer or that he conspired and confederated with the other party to escape from arrest. The instruction was properly refused. The fact that Bongiorno was attempting to escape from the custody of the officer by deceit is not denied. It is manifestly immaterial what means is attempted to effect an escape. It is not necessary that the endeavor be by force of arms. As we have already stated, the plan to escape from the scene of the crime of robbery is necessarily inferred from the facts.

The guilt of the accused was definitely proved. All the errors assigned have been disposed of. The record is clear of prejudicial error, and the judgment is affirmed.

*Judgment affirmed.*