## UNITED STATES ex rel. BONGIORNO v. RAGEN.

### No. 8629.

Circuit Court of Appeals, Seventh Circuit.

Jan. 5, 1945.

Charles Liebman, of Chicago, Ill., for appellant.

George F. Barrett and William C. Wines, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner-appellant, John Bongiorno, was convicted of murder. On appeal to the Supreme Court of Illinois, the conviction was affirmed. People v. John Bongiorno, 358 Ill. 171, 192 N.E. 856. Under the mittimus issued out of the Criminal Court of Cook County, Illinois, where he had been convicted, Bongiorno was placed in the custody of the respondent-appellee, the warden of the Illinois penitentiary.

Seeking relief from this judgment, the petitioner filed in the District Court for the Northern District of Illinois, Eastern Division, a petition for habeas corpus. Mr. Charles Liebman of the Chicago bar was appointed counsel for the petitioner to serve without compensation and he has devoted himself to his responsibility in a manner which this court highly commends. An amended petition was filed, and the matter was heard on the merits by the District Court, which denied the petition. The petitioner obtained a certificate of probable cause from the District Court and gave notice of appeal from the judgment dismissing his petition.

The petitioner first challenges his conviction on the ground that there was no evidence to support it, that it was a mere fiat judgment, the product of a sham trial, citing Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. In that case five negroes were indicted, tried, and convicted of murder and were sentenced to death by a state court in Arkansas. In a petition in the federal court for habeas corpus, it was shown that their trial had been one in form only and that the defendants had been hurriedly convicted under pressure of a mob, who had agreed to accept a speedy legal execution in place of a lynching. The whole trial was carried on without any regard to the defendants' constitutional rights of due process. Because there had been in fact no trial, the parties having merely gone through the motions, the Supreme Court ordered that the writ should be granted and a hearing had.

Consider the contrast here. On July 8, 1933, Ross King and the petitioner conspired to commit robbery. It was about noon when they drove up before 9 South Kedzie Building in Chicago and entered an office on the third floor. Armed with a gun, they forced the several occupants of the small office to face the wall and then proceeded to rifle their pockets, the desks, and the safe. They were thus engaged when a rap sounded at the door accompanied by a shout, "Police officer. Open up!" Smashing a screen in one of the windows, King jumped to a nearby roof. The petitioner stepped into the hall and attempted to persuade the police officer that he was merely engaged in selling some insurance. While the officer

stood in the hall questioning the petitioner, who had backed up against the wall with his hands above his head, King came up the stairway behind the officer and fatally shot him in the back. The petitioner fled and hid in a basement several blocks away, where he was later apprehended. When arrested, he made a voluntary statement, which was introduced as evidence at the trial.

On trial in the Criminal Court of Cook County, Illinois, the petitioner was represented by a paid counsel of his own choosing. The trial was before a jury. On advice of counsel the petitioner did not testify. At the conclusion of the evidence, counsel argued the case to the jury, and the court gave its instructions. The jury retired and after deliberation returned a verdict of guilty. The jury fixed King's punishment at death and the petitioner's at 199 years in prison. Thereafter, motions for a new trial and in arrest of judgment were filed on behalf of the petitioner, were overruled, and judgment was pronounced on October 16, 1933, for a crime committed July 8, 1933.

A writ of error was taken to the Supreme Court of Illinois where paid counsel of petitioner's own choosing, or that of his relatives, represented him. A bill of exceptions including a stenographic report of the evidence was prepared and was approved by petitioner's counsel. It was stipulated that the bill of exceptions should be filed as a part of the record in the Supreme Court. The case was docketed and heard in the Supreme Court of Illinois, and the judgment of the trial court was affirmed on October 19, 1934. 358 Ill. 171, 192 N.E. 856. Petitioner received a copy of this opinion of the Supreme Court of Illinois on November 4, 1934, while he was serving his sentence in the penitentiary.

Petitioner is not a lawyer, but on January 24, 1943, he drafted what he termed a "petition for rehearing" and secured permission of the prison authorities to have it sent to the Illinois Supreme Court. Whether it ever reached that court does not appear.

The recital of these facts shows that this case has not the remotest resemblance to Moore v. Dempsey, supra. Petitioner here was tried and convicted in a court of competent jurisdiction to hear and determine the cause. The court had jurisdiction of the defendant's person. The jurisdiction of the cause and of the defendant's person was never lost. The case went by orderly procedure from the trial court to the Supreme Court under the protection and guidance of the petitioner's own paid counsel. He even had a change of counsel during the appeal. In contrast to sham proceedings under pressure of a mob, as in Moore v. Dempsey, the petitioner had an orderly, leisurely trial in every way conforming to due process.

■ The petitioner insists, nevertheless, that the evidence was not sufficient to support the jury's verdict, that there was in fact no evidence. We have read the opinion of the Supreme Court of Illinois and the admissions contained in the petitioner's petition for habeas corpus, and we are satisfied that there is an abundance of evidence to support his conviction. Even if we disagreed with the Supreme Court of Illinois over the sufficiency of the evidence, we could give no relief for two reasons: First, we may not review in a habeas corpus proceeding errors of law committed by the courts of Illinois. Frank v. Mangum, 237 U.S. 309, 326, 35 S.Ct. 582, 59 L.Ed. 969; Collins v. Johnston, 237 U.S. 502, 505, 35 S.Ct. 649, 59 L.Ed. 1071; Mooney v. Holohan, 294 U.S. 103, 104, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Felts v. Murphy, 201 U.S. 123, 26 S.Ct. 366, 50 L.Ed. 689; Valentina v. Mercer, 201 U.S. 131, 26 S.Ct. 368, 50 L.Ed. 693. Secondly, whether there was evidence to support the verdict involves the guilt or innocence of the appellant, with which on habeas corpus we are not concerned. As Justice Holmes said in Moore v. Dempsey, supra: " * * * what we have to deal with is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved."

In a court of competent jurisdiction, whose jurisdiction was never lost or disturbed at any stage of the proceedings, the petitioner received a fair and impartial trial. That is due process. He can ask no more.

■ The petitioner contends that the failure of the Illinois Supreme Court to file and consider his petition for rehearing was a denial of due process. But the petition seems never to have reached that court. The burden is on the petitioner to show that his petition reached there before he can claim a denial of due process. This he has failed to do.

■ Petitioner also contends that his 199 year sentence is illegal, saying that the intent of the jury was to deprive him of the privilege of a parole after twenty years which a life sentence would have given him. We do not understand that an accused has any voice in what his sentence should be.

352

The 199 year sentence is authorized by the statutes of Illinois [1] and has been held valid by the Supreme Court of Illinois. People v. Pace, 362 Ill. 224, 198 N.E. 319; People v. Rucker, 364 Ill. 371, 4 N.E.2d 492; People v. Hetherington, 379 Ill. 71, 39 N.E.2d 361. The jury gave King, who did the actual shooting, the death penalty, and he was executed. They probably thought petitioner's life should not be forfeited, but that he should be kept in prison as a protection to society, for such a term as would consume all the remaining days of his life. That was not cruel and inhuman punishment. In our opinion, it met the standards of justice.

Furthermore, the petitioner's parole rights are a matter of clemency and grace, relating to prison government and discipline. Farrell v. People, 133 Ill. 244, 24 N.E. 423; People v. Murphy, 276 Ill. 304, 323, 114 N.E. 609. The petitioner is not up for parole. The question of when he shall become eligible for parole is not before us, even if we were competent to consider it. The sentence is authorized by law, and in no sense violates any constitutional right of the petitioner.

Finally, it is contended by the petitioner that his trial took place during a time of public hysteria over crime in Chicago, and that this hysteria deprived him of due process of law. Newspapers published at the time of the petitioner's trial were introduced as evidence. Although they do reflect considerable concern over crimes committed about the time of petitioner's trial, the comments had no particular reference to his case. Not only do they not touch his case, but they do not evidence any such degree of hysteria as to deprive the petitioner of a fair and impartial trial. It never occurred to petitioner to seek a change of venue. In our opinion this proof falls far short of establishing any such extreme situation as existed in Moore v. Dempsey, supra. Frank v. Mangum, supra; Ashe v. United States ex rel. Valotta, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662; Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

We have only to reflect upon the consequences of sustaining the petitioner's contention to discover that in that direction lies real hysteria. If we were to agree that at the time of the petitioner's trial, public sentiment in Chicago was so strongly prejudiced against any one accused of crime that the petitioner could not have received a fair trial within the meaning of due process, then every other person convicted of crime in Chicago during that period would be clamoring for freedom, and would be entitled to it. We will not be a party to the creation of such a chaotic situation purely upon the feeble proof introduced in this case. Indeed, we think we can take judicial notice of the fact that no such state of hysteria existed in Chicago at that time.

Clearly, the judgment under which the petitioner is held is in accordance with due process, and the constitutional rights of the petitioner have not been violated. The judgment of the District Court is affirmed.

[1] "Whoever is guilty of murder, shall suffer the punishment of death, or imprisonment in the penitentiary for his natural life, or for a term of not less than fourteen years." Ill.Anno.Stat. (Smith-Hurd) Ch. 38, § 360.