# Illinois Official Reports

## Appellate Court

<div style="border: 2px solid black; text-align: center;">

### *People v. Mitchell*, 2018 IL App (1st) 153355

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN MITCHELL, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-3355 |
| Filed | December 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-12967(03); the Hon. Lawrence E. Flood, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Manuel S. Serritos, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion.<br>Presiding Justice McBride and Justice Gordon concurred in the judgment and opinion. |

**OPINION**

¶ 1        After a jury trial, defendant Kevin Mitchell was convicted of felony murder predicated on aggravated kidnapping and sentenced to 60 years' imprisonment in the Illinois Department of Corrections (IDOC). On appeal, defendant maintains (1) the charging instrument failed to provide him with adequate notice of the charge against him, (2) his due process rights were violated when the charging instrument failed to demonstrate that the prosecution had jurisdiction to charge him under Illinois law, and (3) he was denied a fair trial where the trial court failed to instruct the jury on the offense of aggravated kidnapping. For the reasons that follow, we affirm.

¶ 2                                BACKGROUND

¶ 3        On June 18, 1999, Darwin Green informed the Federal Bureau of Investigation (FBI) that his twin brother, Darryl, had been kidnapped in Cook County, Illinois. The following day, Darryl's body was discovered alongside a road in a wooded area of Lake County, Indiana. His hands and feet were bound together with duct tape, and he had four gunshot wounds to the back of his head.

¶ 4        After a lengthy investigation by the State and the FBI, defendant was indicted by a grand jury on 26 counts stemming from allegations that he kidnapped and murdered Darryl on June 18, 1999. The 26 charges included 13 counts of murder, 5 counts of knowing and intentional murder, 5 counts of strong probability murder, 1 count of felony murder predicated on aggravated kidnapping, 1 count of felony murder predicated on armed robbery, 1 count of felony murder predicated on burglary, 8 counts of aggravated kidnapping, 1 count of armed robbery, 3 counts of burglary, and 1 count of aggravated unlawful restraint. The indictments alleged that the 26 charged offenses occurred in Cook County and that defendant, while armed with a firearm, along with three other individuals (Dimeyon Cole, Menard McAfee, and Raymond Winters (codefendants)), kidnapped Darryl, held him for ransom, and caused his death.

¶ 5        Defendant proceeded to represent himself *pro se* during the trial. Prior to opening statements but after the jury had been selected, the State nol-prossed 25 counts and elected to proceed only on count III of the indictment, felony murder (720 ILCS 5/9-1(a)(3) (West 1998)) predicated on aggravated kidnapping. On appeal, defendant does not challenge the sufficiency of the evidence or the trial testimony; accordingly only that testimony relevant to the appeal is recounted herein.

¶ 6        The State presented the following evidence, which included the testimony of two codefendants, Winters and McAfee. Winters and McAfee both testified that in exchange for their truthful testimony they pleaded guilty with regard to this offense and received respective sentences of 10 and 30 years, to run concurrently with sentences they were already serving for offenses unrelated to this case.

¶ 7        The evidence presented was as follows. At the time of his death, the victim Darryl and his twin brother Darwin owned and operated a beeper store located in Broadview, Illinois. In June 1999, defendant and his codefendants discussed kidnapping someone and holding them for ransom. They ultimately decided to kidnap one of the owners of the beeper store. After casing the store, on June 18, 1999, Winters and McAfee entered the establishment armed with at least

one firearm. Darryl, who happened to be working in the store at the time, had his limbs duct taped and was carried out of the store by Winters and McAfee. Darryl was placed into a Chevy Astro van, where defendant and Cole were waiting inside. Defendant and his codefendants transported Darryl to a residence located next door to defendant's mother's house in the 3900 block of West Maypole Avenue in Chicago.

¶ 8    At 2:30 p.m. Darwin received a phone call on his cell phone. When Darwin answered, the caller informed him "we got your brother" and hung up. Darwin did not recognize the voice and believed it to be a prank call. Darwin, however, received four or five more phone calls to the same effect, and the caller indicated that he wanted $200,000 for Darryl's return. Darwin informed the caller that he did not have $200,000, so the caller then demanded $100,000. Darwin responded to the caller he needed time to obtain the funds.

¶ 9    In the meantime, Darwin went to the beeper store and found the front door to be locked. Darwin telephoned Darryl's girlfriend Tiffany and requested she bring the key to the business. When Tiffany arrived, Darwin went inside and found the store to be in disarray.

¶ 10    Darwin then called the FBI to inform them of his brother's kidnapping. Darwin met with FBI special agents Matt Alcoke and Jim Stover at the Broadview, Illinois, police station. After informing them about the phone calls, Darwin agreed to let the FBI agents record the calls.

¶ 11    Winters testified that at 8 p.m. he called Darwin and told him to arrange for Darryl's funeral. Two voices can be heard on the recording of the phone call, which was published to the jury. One of the voices on the recording was identified by defendant's girlfriend, Stephanie Lewis, and McAfee's sister, Marianne McAfee, as belonging to defendant. Darwin did not receive any further phone calls regarding his brother's abduction.

¶ 12    Believing Darwin had contacted the authorities, defendant and his codefendants decided to drive to Indiana, approximately 1½ hours away. Winters drove the Chevy Astro van while defendant provided him with directions. During the drive, Darryl was beaten over the head with a steering wheel locking device and stunned with a taser. According to Winters, they hoped that by beating Darryl they could somehow still obtain the ransom money. Defendant directed Winters to exit the highway when they reached Gary, Indiana. Winters then turned down a wooded residential street and made a U-turn. The van stopped by the side of the road, where defendant, Cole, and McAfee exited the vehicle. Defendant and McAfee carried Darryl out of the vehicle and placed him in a ditch. McAfee then remained outside the vehicle as a lookout while defendant and Cole stayed with Darryl. Winters and McAfee then heard at least three gunshots. Defendant and Cole subsequently returned to the van. According to McAfee, defendant informed them that Cole was too scared to pull the trigger so defendant said he had to do it.

¶ 13    Eleanor Jonson testified that, at the same time as the van was pulling into the residential street, she was pulling her vehicle into her friend's driveway. Jonson also testified she noticed the van make a U-turn. Jonson watched from a distance as two men lifted what she testified looked like a large rug out of the van. The two men threw the object they were carrying into a ditch on the side of the road, and Jonson heard three gunshots. The next day, Jonson walked over to the location where she observed the men and discovered Darryl's body. Jonson thereafter contacted the authorities.

¶ 14    An autopsy was conducted by the Lake County, Indiana, medical examiner, who determined that Darryl died due to four gunshot wounds to the head. Three .380-caliber shell casings were discovered at the scene, and three bullets were recovered from Darryl's body

during the autopsy. According to Brian Mayland, a forensic scientist with the Illinois State Police and an expert in firearms identification, the three bullets were discharged from the same firearm.

¶ 15    During their investigation FBI Special Agents Stover and Alcoke discovered that the Chevy Astro van was driven exclusively by defendant but registered to Stephanie Lewis, defendant's girlfriend. They also discovered that the cell phone used to make the ransom calls was owned by Winters. The FBI agents later located the Chevy Astro van, obtained a search warrant, and searched the vehicle. In conducting the search, 14 separate sets of fingerprints were recovered, one which they identified as matching Winters's fingerprints. A steering wheel locking device was also discovered inside the vehicle. A preliminary test indicated the presence of blood on the device. A subsequent DNA test revealed that it was Darryl's blood.

¶ 16    The State rested, and defendant rested without presenting any evidence. After closing arguments and jury instructions, the jury deliberated and ultimately found defendant guilty of felony murder predicated on aggravated kidnapping (720 ILCS 5/9-1(a)(3) (West 1998)). During posttrial motions defendant was represented by counsel. Defense counsel filed a motion in arrest of judgment and a motion for a new trial. In relevant part, defense counsel argued that the trial court lacked subject-matter jurisdiction over the case because the murder occurred in Indiana. The trial court denied the motions. The matter then proceeded to sentencing, where defendant was sentenced to 60 years' imprisonment in the IDOC. This appeal followed.

¶ 17                                         ANALYSIS
¶ 18    On appeal, defendant maintains (1) the charging instrument failed to provide him with adequate notice of the charge against him, (2) his due process rights were violated when the charging instrument failed to demonstrate the prosecution had jurisdiction to charge defendant under Illinois law, and (3) he was denied a fair trial where the trial court failed to instruct the jury on the offense of aggravated kidnapping. We address each issue in turn.

¶ 19                             Sufficiency of the Indictment
¶ 20    Defendant contends that the indictment was insufficient for two reasons. First, the indictment was insufficient because the State failed to provide him with adequate notice of the charge against him. Second, the indictment failed to assert the prosecution had jurisdiction to charge defendant of felony murder as it did not specify that the conduct constituting the aggravated kidnapping occurred in Illinois. We first address defendant's contention regarding notice.

¶ 21                                          Notice
¶ 22    In his opening brief, defendant asserted that the indictment failed to adequately inform him of the charges against him with sufficient detail to allow preparation of his defense because the State nol-prossed all of the charges except for count III, the felony murder count predicated on aggravated kidnapping. Relying on *People v. Carey*, 2016 IL App (1st) 131944, defendant maintained he was without sufficient knowledge regarding which aggravated kidnapping charge served as the predicate for the felony murder count. As noted by the State in its response, the appellate court's decision in *Carey* was overturned by our supreme court after

- 4 -

defendant's opening brief was filed. See *People v. Carey*, 2018 IL 121371, ¶ 1. Consequently, defendant acknowledges his argument regarding sufficient notice is no longer viable and concedes that point in his reply.

¶ 23                                    *Geographical Jurisdiction*

¶ 24        In his briefs, defendant attacked the sufficiency of the indictment arguing that the count under which he was tried and found guilty (count III) was ambiguous and failed to demonstrate the State had jurisdiction to prosecute him for a murder that occurred in Indiana. Defendant argues that the insufficient charging instrument "compromised" his right to due process. Thus, defendant maintains that the prosecution failed to prove it had geographical jurisdiction beyond a reasonable doubt.

¶ 25        Section 1-5(a)(1) of the Criminal Code of 1961 (Code) provides that a defendant is subject to prosecution in Illinois for a criminal offense if it is "committed either wholly or partly within the State." 720 ILCS 5/1-5(a)(1) (West 1998); *People v. Young*, 312 Ill. App. 3d 428, 429-30 (2000). An offense is committed partly within Illinois if "either the conduct which is an element of the offense, or the result which is such an element, occurs within the State." 720 ILCS 5/1-5(b) (West 1998). In regards to prosecutions pursuant to section 9-1(a)(3) of the Code (720 ILCS 5/9-1(a)(3) (West 1998) (first degree murder committed while attempting or committing a forcible felony other than second degree murder), also known as the "felony-murder statute," section 1-5(b) provides that, "the attempt or commission of a forcible felony other than second degree murder within this State is conduct which is an element of the offense for which a person is subject to prosecution in this State." 720 ILCS 5/1-5(b) (West 1998). "The purpose behind the felony-murder statute is to limit the violence that accompanies the commission of forcible felonies, so that anyone engaged in such violence will be automatically subject to a murder prosecution should someone be killed during the commission of a forcible felony." *People v. Belk*, 203 Ill. 2d 187, 192 (2003).

¶ 26        As with other elements, the State may satisfy its burden of proving geographical jurisdiction by either direct or circumstantial evidence. *People v. Gilliam*, 2013 IL App (1st) 113104, ¶ 34 (citing *Young*, 312 Ill. App. 3d at 430). The test applied in an appeal challenging a criminal conviction based on the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 27        Defendant maintains that the State's evidence was insufficient to prove the element of geographical jurisdiction beyond a reasonable doubt, analogizing the facts in this case to those in *People v. Holt*, 91 Ill. 2d 480 (1982). Defendant's reliance on *Holt* is misplaced because the legislature amended Illinois's geographical jurisdiction statute as a direct result of the *Holt* decision. Therefore, *Holt* is not determinative of the outcome in the present case. Compare Ill. Rev. Stat. 1979, ch. 38, ¶ 1-5, with 720 ILCS 5/1-5 (1998).

¶ 28        In *Holt*, the defendant kidnapped the victim in Illinois and drove her to Wisconsin where he raped and murdered her. *Holt*, 91 Ill. 2d at 482-83. The defendant was convicted in Illinois of aggravated kidnapping and murder under the felony-murder rule. *Id.* On appeal, the State argued that the kidnapping was an element of the murder as charged under the felony-murder rule, and the occurrence of the kidnapping in Illinois therefore conferred jurisdiction over the murder charge. Our supreme court disagreed, holding that pursuant to section 1-5 of the Code as then in effect (Ill. Rev. Stat. 1979, ch. 38, ¶ 1-5), the kidnapping in Illinois could not support

jurisdiction in Illinois over the felony-murder charge. *Holt*, 91 Ill. 2d at 492. This was so where the facts demonstrated the killing outside of Illinois was not done in furtherance of the kidnapping and there was not "otherwise a danger inherent in the felony [(kidnapping)], so that one could say realistically that the felony caused the death." *Id.* at 486.

¶ 29    Subsequent to the *Holt* decision, our legislature changed the law regarding Illinois's geographical jurisdiction to include the exact set of facts as they appear in this case. The legislative debates indicate that the legislature intended to allow a felony murder charge to be prosecuted in Illinois when the death occurred outside of Illinois but the underlying forcible felony was attempted or committed in Illinois. See 85th Ill. Gen. Assem., House Proceedings, June 19, 1987, at 138. The debates further demonstrate that the legislature specifically sought to change the law in response to the *Holt* decision:

> "My understanding of the Bill is that the Supreme Court ruled some time ago that the Felony, the commission of the forcible Felony, which I had always thought was a predicate to the Felony Murder, did not constitute an element of the crime so that the rule where, when an element of the crime takes place in Illinois, any part of the crime, or any act committed in the course of the commission of the crime, whether it occurred outside of the State or not, can be subject to prosecution in Illinois. That is, the Illinois courts have jurisdiction. The Supreme Court held, apparently, that the underlying forcible Felony attempt was not an element of Felony Murder. That resulted in the application of the general rule precluding prosecution for the murder in Illinois." *Id.* at 144 (remarks of Representative McCracken).

Representative McCracken went on to explain how the amendment to the Criminal Code would affect Illinois's geographical jurisdiction over the offense of felony murder:

> "What this will do, or what it seeks to do, is state… in effect, overrule that [*Holt*] decision holding that the underlying forcible Felony attempt or commission, is an element in the offense of Felony Murder. *** This [amendment] would bring us within the general rule that where any element of the crime is committed in Illinois, that crime may be prosecuted in Illinois regardless of where it ultimately or otherwise occurred." *Id.* at 144-45.

¶ 30    Upon the passing of this public act, the following sentence pertaining to felony murder was added to section 1-5 of the Code: "In a prosecution pursuant to paragraph (3) of subsection (a) of Section 9-1, the attempt or commission of a forcible felony other than second degree murder within this State is conduct which is an element of the offense for which a person is subject to prosecution in this State." Pub. Act 85-740 (eff. Jan. 1, 1988); 720 ILCS 5/1-5 (West 1998). Thus, as intended by our legislature, when the predicate felony in a felony murder charge is either attempted or committed in Illinois it is considered an element of the offense, and Illinois will have geographical jurisdiction over the felony murder charge.

¶ 31    Viewing the evidence in the light most favorable to defendant, under section 1-5 of the Code, the State proved beyond a reasonable doubt that the aggravated kidnapping was committed in Illinois. To reiterate, section 1-5 of the Code provides that a defendant is subject to prosecution in Illinois for a criminal offense if it is "committed either wholly or partly within the state." 720 ILCS 5/1-5(a)(1) (West 1998). An offense is committed partly within Illinois if "either the conduct which is an element of the offense, or the result which is such an element, occurs within the State." 720 ILCS 5/1-5(b) (West 1998).

¶ 32     Here, the aggravated kidnapping (an element of the offense as provided in section 1-5 of the Code) was committed in Illinois. An aggravated kidnapping is committed when an individual either (1) kidnaps for the purpose of obtaining ransom, (2) inflicts great bodily harm, or (3) commits the offense of kidnapping while armed with a dangerous weapon, including a handgun. See 720 ILCS 5/10-2, 33A-1(b) (West 1998). The evidence presented by the State, which included the testimony of accomplices to the kidnapping, demonstrated the predicate forcible felony, aggravated kidnapping, occurred in Illinois. Winters testified that he and defendant, along with the codefendants, planned to kidnap one of the owners of the beeper store located in Broadview, Illinois. He further testified that on June 18, 1999, he, defendant, and the codefendants drove to the beeper store armed with firearms. He then exited the van and entered the store with McAfee. According to Winters, he held Darryl and forced him out the back door at gunpoint and placed him into the Chevy Astro van. Winters also testified that he heard defendant tell Darryl numerous times that "[h]e gone give that money up" but that Darryl responded that he did not have any money. Winters testified that they took Darryl to defendant's mother's house, where defendant telephoned Darwin requesting a ransom for Darryl's release. Winters also made a call to Darwin to the same effect. When Darwin did not produce the funds, Winters called Darwin and relayed a message from defendant to "make arrangements" for his brother's funeral and that he (Darwin) caused his brother's death. According to Winters, defendant's voice can be heard in the background of the audio recording of the phone call. Winters further testified that defendant told him and their codefendants that they were going to take Darryl to Indiana and act like they were going to kill him. Winters drove the Chevy Astro van while defendant struck Darryl with a club four or five times while telling Darryl he wanted the money. A taser was also used by defendant during the drive. Upon exiting the expressway in Gary, Indiana, Winters stopped the van; Darryl was taken out of the van and shot by defendant.

¶ 33     Codefendant McAfee similarly testified. According to McAfee, in summer of 1999, defendant asked him if he wanted to rob someone. McAfee agreed because he needed money and so he, defendant, and their codefendants began casing the beeper store. Then, on June 18, 1999, they went to the beeper store with the intention of kidnapping one of the twins. Everyone was armed except for McAfee. He and Winters entered the store while defendant waited in the Chevy Astro van. McAfee restrained Darryl and searched the cash register. Finding little money, McAfee called defendant on a walkie-talkie and informed defendant that there was no money in the store. Defendant instructed McAfee to bring Darryl to the van. Once Darryl was in the van, they drove to defendant's mother's house where they held Darryl at gunpoint and made phone calls to Darwin requesting money for Darryl's release. After sunset, they carried Darryl from the basement to the van, which they drove to Indiana. While they were in the van, McAfee hit Darryl on the head with a club, and Cole used a taser on Darryl. When they exited the highway, the van came to a stop in a wooded area, and McAfee got out of the van along with defendant and Cole. Defendant then carried Darryl to the woods followed by Cole who was armed with a handgun. After hearing three shots, defendant and Cole returned to the van; defendant, not Cole, was now carrying the handgun. The evidence presented, viewed in the light most favorable to the prosecution, clearly demonstrates that the aggravated kidnapping occurred in Illinois and continued into Indiana.

¶ 34     Defendant, however, relying on *People v. Hickman*, 59 Ill. 2d 89 (1974), and *People v. Bongiorno*, 358 Ill. 171 (1934), argues that the evidence here demonstrates that the conduct

constituting aggravated kidnapping ended in Illinois before defendant took Darryl to Indiana, where his death occurred. According to defendant, when he and his codefendants reached his mother's house, it was a "place of safety" under *Hickman* and *Bongiorno*, and therefore the aggravated kidnapping was complete at that time. Other than this general argument, defendant points us to no specific evidence that the aggravated kidnapping concluded when defendant and his codefendants reached his mother's house.

¶ 35      We find defendant's reliance on *Hickman* and *Bongiorno* to be misplaced. Illinois courts have held that a killing which occurs during the course of an escape from a forcible felony is within the operation of the felony-murder rule. *Hickman*, 59 Ill. 2d at 94 (the period of time and activities involved in escaping to a place of safety are part of the crime itself). The felony-escape rule was explained in *Bongiorno* as follows:

> "It is also a recognized principle of law that where two or more persons are engaged in a conspiracy to commit robbery and an officer is murdered while in immediate pursuit of either or both of the offenders who are attempting escape from the scene of the crime with the fruits of the robbery, either in possession of one or both, the crime of robbery is not complete at the time of the murder, inasmuch as the conspirators had not then won their way, even momentarily, to a place of temporary safety, and the possession of the plunder was nothing more than a scrambling possession." *Bongiorno*, 358 Ill. at 173.

Here, *Bongiorno* is not controlling under these facts because the evidence demonstrates that defendant was committing aggravated kidnapping while Darryl was confined in defendant's mother's house and through Darryl's murder in Indiana. See 720 ILCS 5/9-1(a)(3) (West 1998) ("A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death *** he is attempting or committing a forcible felony other than second degree murder."). Winters and McAfee testified that Darryl remained duct taped and was held at gunpoint by Cole after they left with defendant. Upon their return, defendant and his codefendants placed Darryl, who was still duct taped, into the Chevy Astro van and drove to Indiana. While en route to Indiana, Darryl was held at gunpoint, beaten with a club, and stunned with a taser. While defendant suggested at oral argument that the State must prove that the aggravated aspect of the kidnapping was ongoing in order to confer jurisdiction to Illinois and that the evidence is unclear as to whether Darryl was beaten while he was still in Illinois or in Indiana, exactly where Darryl was beaten is of no consequence because the evidence demonstrated that the kidnappers were armed with handguns throughout the kidnapping. See 720 ILCS 5/10-2(a)(5), 33A-1 (West 1998) (a kidnapper is guilty of the offense of aggravated kidnapping when he "[c]ommits the offense of kidnapping while armed with a dangerous weapon"). Furthermore, the testimony of Winters and McAfee did not preclude the jury from concluding that Darryl was beaten and stunned in Illinois. See 720 ILCS 5/10-2(a)(3) (West 1998) (a kidnapper is guilty of the offense of aggravated kidnapping when he "[i]nflicts great bodily harm"). Moreover, Winters' testimony demonstrated that the kidnappers believed that by continuing to beat Darryl they could still obtain the ransom. See 720 ILCS 5/10-2(a)(1) (West 1998) (a kidnapper is guilty of the offense of aggravated kidnapping when he "[k]idnaps for the purpose of obtaining ransom from the person kidnapped or from any other person"). Accordingly, for the reasons stated herein, we conclude that the State proved the element of geographical jurisdiction beyond a reasonable doubt.

¶ 36                                    Jury Instruction

¶ 37        Defendant further argues that he was denied a fair trial because the trial court failed to fully instruct the jury on aggravated kidnapping, the predicate felony to felony murder. While defendant admits that the trial court instructed the jury regarding the definition of aggravated kidnapping, defendant maintains that the trial court committed reversible error when it did not provide the definition of kidnapping to the jury. Defendant further asserts the jury instructions were insufficient where the trial court failed to name an offense (either aggravated kidnapping or kidnapping) following the allegation of great bodily harm in the definition of aggravated kidnapping.

¶ 38        In response, the State asserts that, because defendant failed to raise this issue before the trial court, either at the time the instructions were chosen or in his motion for a new trial, he has forfeited the review of this issue. The State maintains that even if there was error with the jury instructions, any error was not grave error where the trial court did not omit an instruction on an element of the offense.

¶ 39        Defendant acknowledges that the error was not objected to at trial and was not raised as error in his posttrial motion. He seeks review of the issue under the plain-error doctrine. Ordinarily, a defendant forfeits review of an alleged error involving a jury instruction if he does not object to the instruction or offer an alternative instruction and does not raise the issue in a posttrial motion. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Under Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013), a defendant does not waive substantial defects in criminal jury instructions by failing to timely object to them where the interests of justice require. *Piatkowski*, 225 Ill. 2d at 564. Our supreme court has held that Rule 451(c) is coextensive with the plain-error clause of Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) and that the two rules are construed identically. *Piatkowski*, 225 Ill. 2d at 564.

¶ 40        Under the plain-error doctrine, this court will review forfeited challenges when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant or (2) a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005). The defendant bears the burden of persuasion under each prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593 (2008). Where a defendant is unable to establish plain error, it is incumbent upon us to honor the procedural default. *People v. Keene*, 169 Ill. 2d 1, 17 (1995). In undertaking this review, the first step in the analysis is to determine if error occurred in the giving of the instruction. *Piatkowski*, 225 Ill. 2d at 565.

¶ 41        Jury instructions are intended to guide the jury and to assist it in its deliberations and in reaching a proper verdict. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). The function of jury instructions is to convey to the jury the law that applies to the evidence presented. *Herron*, 215 Ill. 2d at 187. Jury instructions should not be misleading or confusing, but their correctness depends upon not whether defense counsel can imagine a problematic meaning but whether ordinary persons acting as jurors would fail to understand them. *Id.* at 188. Jury instructions should be construed as a whole, and we must determine whether the instructions fairly, fully, and comprehensively advised the jury of the relevant legal principles. *Parker*, 223 Ill. 2d at 501. Whether jury instructions accurately conveyed the applicable law is reviewed *de novo*. *Id.*

¶ 42        We observe, however, that where a word or phrase is self-defining or commonly understood, the trial court's failure to define the term during jury instructions is not reversible

error. See, *e.g.*, *People v. Edwards*, 343 Ill. App. 3d 1168, 1180 (2003) (instruction was not necessary to define "robbery"); *People v. Manning*, 334 Ill. App. 3d 882, 890 (2002) (no error where trial court did not define "conceal"); *People v. Bradley*, 192 Ill. App. 3d 387, 393-94 (1989) (term "stolen motor vehicle" was readily understood and not in need of further definition via instruction). In contrast, "an omitted jury instruction constitutes plain error only when the omission creates a serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Hopp*, 209 Ill. 2d 1, 12 (2004).

¶ 43 In this case, as to the felony murder charge, the jury was given Illinois Pattern Jury Instructions, Criminal, No. 7.01 (approved Jan. 30, 2015) (hereinafter IPI Criminal) defining first degree murder and IPI Criminal No. 7.02 (approved Jan. 30, 2015) ("Issues In First Degree Murder (When Second Degree Murder Is Not Also An Issue)") with the forcible felony of "aggravated kidnapping" indicated as the predicate offense:

> "To sustain the charge of first degree murder, the State must prove the following propositions: First, that the defendant, or one for whose conduct he is legally responsible, performed the acts which caused the death of Darryl Green.
>
> And second; that when the defendant, or one for whose conduct he is legally responsible, did so, he was committing the offense of aggravated kidnapping.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proven beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your considerations of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

¶ 44 The jury was also provided with the definitional instruction of "aggravated kidnapping" as required by the committee note to IPI Criminal No. 7.01: "When paragraph [4] is given, insert in the blank the applicable forcible felony from those listed in 720 ILCS 5/2-8 (except second degree murder). Follow this instruction with the instruction defining that forcible felony." IPI Criminal No. 7.01, Committee Note. The definitional instruction for aggravated kidnapping provided to the jury mirrored IPI Criminal 4th No. 8.04 and was as follows:

> "A person who kidnaps another commits the offense of aggravated kidnapping when he kidnaps for the purpose of obtaining ransom or he inflicts great bodily harm upon the victim or he does so while armed with a dangerous weapon."

The jury was not provided with the instruction for "kidnapping."

¶ 45 We find the cases of *People v. McClendon*, 197 Ill. App. 3d 472 (1990), and *Edwards* to be instructive. In *McClendon*, the defendant was convicted of armed violence based upon aggravated battery. *Id.* at 474. On appeal, the defendant argued that the trial court erred in instructing the jury on armed violence because, although the jury was instructed on aggravated battery, it was not instructed on the definition of battery. *Id.* at 480. The reviewing court first acknowledged that the defendant failed to preserve this issue for review and thus it would be considering the issue under the plain-error doctrine. *Id.* The reviewing court then observed that, "[i]n instructions, a term which is employed in a general, nontechnical context need not be defined." *Id.* After comparing the statutory definition of battery ("[a] person commits battery when he knowingly or intentionally, without legal justification, causes harm to an individual

- 10 -

by any means") to the dictionary definition of battery (" 'the unlawful beating or use of force on a person without his consent' "), the *McClendon* court concluded that even without the statutory definition of battery, the jury "would have understood the meaning of battery in this case" and thus no plain error occurred. *Id.* at 480-81 (citing Webster's Ninth New Collegiate Dictionary 135 (1986)).

¶ 46    Similarly, in *Edwards*, the reviewing court concluded that the term "robbery" was employed in a general context and thus would have been understood by the jury so as not to rise to the level of plain error. There, the defendant was found guilty of felony murder predicated upon the offense of robbery. *Edwards*, 343 Ill. App. 3d at 1170. On appeal, the defendant argued he was denied a fair trial where the trial court did not instruct the jury as to the definition of robbery. *Id.* at 1175. The *Edwards* defendant, like the defendant in *McClendon*, also failed to raise the issue before the trial court, and thus the appellate court reviewed his claim for plain error. *Id.* at 1176. Although the reviewing court found that the omission of the definition of robbery (the predicate offense to the defendant's charge of felony murder) was an error, it ultimately concluded it was not a grave error because the omitted instruction was not an element of the offense of felony murder. *Id.* at 1175-76, 1178-80. The reviewing court observed that the committee note to IPI Criminal 4th No. 7.01 required "that the jury receive, not the instruction on the elements of robbery but, rather, the more general instruction defining robbery." *Id.* at 1179. The court further observed:

> "The requirement of a definitional instruction on the underlying offense, and not an elements instruction, may be due in part to the fact that proof that the underlying felony occurred is not used to establish that felony *per se*, but is used to establish the requisite substitute criminal intent for felony murder [citation]. In order to sustain a charge of felony murder the State is not required to prove an intentional murder [citation]. The underlying forcible felony substitutes for the intent to commit murder. [Citation.]" *Id.* (citing *People v. Gulliford*, 86 Ill. App. 3d 237, 244 (1980), *People v. Shaw*, 186 Ill. 2d 301, 322 (1998), and *People v. Jenkins*, 190 Ill. App. 3d 115, 137 (1989)).

¶ 47    The *Edwards* court adopted the approach used in *McClendon* and compared the statutory definition of robbery with its dictionary definition. In doing so, it concluded that the term robbery was "employed in a general, nontechnical context" and that nothing in the jury instructions obscured its meaning. *Id.* at 1180. The *Edwards* court ultimately concluded no grave error occurred in the case, particularly where "the committee notes to IPI Criminal 4th require[d] that the jury be given, not the instruction on the elements of robbery but, rather, just the definition." *Id.* The *Edwards* court further stated: "We believe that this is to make sure that the jury understands the nature of the underlying forcible felony. Although people may not understand the nature of all underlying forcible felonies, people commonly understand the nature of simple words like 'battery' and 'robbery' and there is very little chance of confusion." *Id.*

¶ 48    Defendant here cannot establish that there was a serious risk the jury did not understand the definition of kidnapping, as defendant was not convicted of aggravated kidnapping and the jury was presented with evidence defendant and his codefendants duct taped Darryl's limbs, forcibly removed him from his place of business, held him in the basement of a residence, and transported him to Indiana against his will. The offense of kidnapping is defined as follows: "Kidnapping occurs when a person knowingly: (1) And secretly confines another against his will, or (2) By force or threat of imminent force carries another from one place to another with

- 11 -

intent secretly to confine him against his will, or (3) By deceit or enticement induces another to go from one place to another with intent secretly to confine him against his will." 720 ILCS 5/10-1(a) (West 1998). Kidnapping is defined in the dictionary as "to seize and detain or carry away by unlawful force or fraud and often with a demand for ransom." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/kidnap (last visited Oct. 3, 2018) [https://perma.cc/3ETV-GPJ7]. In this case, where defendant was not prosecuted for aggravated kidnapping or kidnapping, the term "kidnapping" was employed in a general, nontechnical context and, pursuant to our case law, need not be defined. See *Edwards*, 343 Ill. App. 3d at 1180; *McClendon*, 197 Ill. App. 3d at 481.

¶ 49    Moreover, the jury instructions provided in this case were even more compressive than those provided in *Edwards*. Whereas in *Edwards* the trial court failed to instruct the jury regarding the predicate offense of robbery, the jury in this case was provided with the definition instruction for the predicate offense of aggravated kidnapping. The term "aggravated kidnapping" was unobscured and was defined using the pattern jury instruction. While the definitional instruction for "kidnapping" was not provided to the jury, we find that the general definition for the term "kidnapping" provided the jury with what it needed to determine whether the State proved defendant guilty of felony murder beyond a reasonable doubt. See *Edwards*, 343 Ill. App. 3d at 1180. Like the terms "battery" and "robbery," "kidnapping" is a commonly understood, simple term with "very little chance of confusion." See *id.*

¶ 50    Defendant further argues that the jury instructions were insufficient where the trial court failed to name an offense (either aggravated kidnapping or kidnapping) following the allegation of great bodily harm in the definition of aggravated kidnapping.

¶ 51    To put defendant's argument into context, we recite the pertinent language of the IPI Criminal 4th No. 8.04 "Definition Of Aggravated Kidnapping" to which he is alluding:

> "A person who kidnaps another commits the offense of aggravated kidnapping when
>
> [1] he kidnaps for the purpose of obtaining ransom.
>
> <div align="center">[or]</div>
>
> ***
>
> [3] he [ *(inflicts great bodily harm) (commits ___)* ] upon the victim.
>
> <div align="center">[or]</div>
>
> ***
>
> [5] he does so while armed with a dangerous weapon." (Emphasis added.)

The jury was provided with the following instruction: "A person who kidnaps another commits the offense of aggravated kidnapping when he kidnaps for the purpose of obtaining ransom or he *inflicts great bodily harm* upon the victim or he does so while armed with a dangerous weapon." (Emphasis added.)

¶ 52    Defendant maintains that the trial court failed to abide by the committee note to this instruction, which provides, "In paragraph [3], insert in the blank the name of the applicable felony and give the instruction defining that felony immediately following this instruction" when it did not name aggravated kidnapping or kidnapping following the great bodily harm phrase. See IPI Criminal 4th No. 8.04, Committee Note. We disagree with defendant's interpretation of the committee note. The contents contained within the brackets of paragraph

[3] are themselves contained within parentheses. This indicates that instructions should provide for one phrase ("inflicts great bodily harm") or the other phrase ("commits ___"). IPI Criminal 4th No. 1.00 defines this as "[a]lternative language," which is "designed to meet the circumstances of each case" and "is either bracketed or enclosed in parentheses." Here, the trial court included the "inflicts great bodily harm" phrase in the jury instruction, and thus it did not need to include the "commits ___" phrase. Accordingly, we find no error occurred and therefore decline to review defendant's claim under plain-error analysis.

¶ 53 In sum, "[t]he purpose of jury instructions is to provide the jury with correct legal principles [to] apply to the evidence, thus enabling the jury to reach a proper conclusion based on the applicable law and the evidence presented." *People v. Jackson*, 331 Ill. App. 3d 279, 290 (2002). As recognized by the court in *Herron*: "Jury instructions should not be misleading or confusing [citation], but their correctness depends upon not whether defense counsel can imagine a problematic meaning, but whether ordinary persons acting as jurors would fail to understand them [citation]." *Herron*, 215 Ill. 2d at 187-88. Our review of the record as a whole reveals that the jury would not have been misled or confused by the jury instructions presented. Accordingly, we affirm the judgment of the circuit court.

¶ 54                                          CONCLUSION

¶ 55 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 56 Affirmed.